## STATE v. MAY.

1. The limits of a cross-examination are within the discretion of the trial judge, and his rulings in this matter will not be interfered with unless an abuse of his discretion is made to appear.

2. In a prosecution for selling liquor without a license, a witness and informer may not be asked on cross-examination whether he has not acted as informer in like cases. Such testimony is irrelevant.

3. Where a druggist, in ignorance of any intended evasion of the law, fills a prescription from a reputable physician for three pints of whiskey, by selling and delivering it on three several days, one pint each time, there is no violation of the law which prohibits any druggist to "sell more than one time upon the same prescription, whether the same shall direct more than one sale or not. And if a sale be made a second time upon the same prescription, the druggist so selling shall be deemed to have sold without any prescription." MR. JUSTICE McIVER, *dissenting.*

Before WITHERSPOON, J., York, April, 1888.

This was an indictment against John May, jr., for selling liquor

without a license in April, 1887. During the cross-examination of John Robinson, he testified as follows: "Have been sworn on this same series of cases before. Said on former occasion that I was offered $50—that I was told that Mr. May would be fined $50, and that I would get one-half. I said that—that it was advertised in the newspapers that reporters would get one-half the fines, $25. Q. Were you sworn in this case against John May once before in this court house? A. Yes, sir. Q. Did you ever attend the Greenville court? A. Yes, sir. Q. How many times? (By the Court: Is that competent to bring into notice—the Greenville court? Mr. Hart: I am only trying to test the veracity of the witness. Mr. Solicitor: It must be connected with this case in some way. Mr. Hart: I want to ask the witness how many times he has sworn against parties indicted for selling whiskey, who were acquitted. The Court, to witness: I will excuse you from answering that question. Defendant's counsel excepts.) Q. You were sworn and testified that he sold the whiskey on the 23rd of April, two days before this? A. Yes, sir. Q. Did the jury convict on your oath or not? (Mr. Solicitor objects. Objection sustained. The Court: I shall instruct the jury according to the evidence in this case. Defendant's counsel excepts.) Q. That was during the same time—when you were sworn here—that you were said to be acting as a special policeman? A. Yes, sir. Q. The promise was that in each case you were to get one-half of the fines? A. There was no promise made. Q. You deny that.Mr. O'Farrell said every case that is convicted that a person reports, they are entitled to one-half the fine? I understood you to say just now that there was some talk between you and Mr. O'Farrell? A. I say so yet. Q. That you would get one-half the fines? A. Not I, but any man who reported. Q. You admit that he told you that the fines would be $50? A. Yes, sir; he told me that in case he was convicted it would be $50."

The judge charged the jury as follows:

The State charges that John May, jr., on the 21st of April of last year, violated the law, as an apothecary or druggist, by selling whiskey without a prescription or license. What is the law upon that subject? The law is explicit. It provides that it shall not be lawful for any apothecary or druggist, except upon the

prescription of a regular practising physician for a patient upon whom he is in attendance, to trade or barter any spirituous or malt liquors, unless such an apothecary, druggist, &c., shall obtain a license. The statute goes on further to say, that it shall be unlawful for any physician to give a prescription for any such liquors except when in actual *bona fide*, in good faith, attendance upon a patient—upon a sick person. Has the State made out its case against John May beyond a reasonable doubt in this case? The law contemplates that physicians and druggists shall act in good faith; it presumes upon that; the law presumes that every man acts honestly and in good faith until the contrary appears.

What is the duty of an apothecary or druggist? According to the express provision of the statute, he can only sell or barter whiskey, spirits, or intoxicating liquors upon the prescription of a regular practising physician and for a patient. Who is a patient? Is it a man who wants to gratify his depraved appetite for whiskey? It must be some person who is suffering from some bodily ailment or infirmity, some physical suffering, and he must go to a physician to get the benefit of that physician's medical experience to relieve him of his physical suffering or ill. Whenever a man goes to a physician, as I construe the statute, and goes there for the purpose of getting the benefit of the physician's medical attainments, to relieve his bodily ailments, and the physician honestly and *bona fide* prescribes whiskey for him, then there is no violation of the law, although the physician may err in his judgment. Yes, if he brings to bear the exercise of an honest judgment, then there is no violation of the law. I was impressed with the answer given by Dr. Bratton, a witness, here on the stand. The question was asked him, "Why didn't you give him a prescription?" "Simply because I didn't examine the patient." There is the key to the whole matter—a physician giving a prescription to a patient without examining the patient to know what the patient needs. It won't do for the patient to prescribe for the physician. If a patient goes to a physician and says, "Doctor, I want whiskey; you must give it to me," and the physician, or apothecary either, gives the man whiskey simply to gratify his depraved appetite for whiskey, or mania for whiskey, he violates the law, clearly violates it.

You are the judges of the testimony. Did John May have a prescription from a practising physician? If you conclude that, from the testimony, he furnished any whiskey to John C. Robinson, and took money for it, did he have it at the time? I charge you that he could only furnish whiskey on one prescription once. If there is a protracted sickness, the presumption is that the physician will give his patient enough. It would not do for a physician to put a prescription in a drug store and let it remain there until the patient suggested that he needs it. You are the judges of the testimony, and it is for you to say whether or not, in this instance, the law has been violated and evaded. You are the sole judges of the testimony. It is incumbent upon the State to make out its case beyond a reasonable doubt. * * * But if the State has satisfied you, from the testimony in the case, that John May sold whiskey without a prescription, you will find a verdict of guilty. So, your verdict will be either guilty, if you conclude that the State has made out its case—that he sold whiskey without a prescription and without a license, for he must have one or the other—or not guilty.

If a druggist acts in good faith, it is not necessary that he should go and look at the patient, but he should look into the question, whether this is a regular practising physician The law says whiskey is used as a medicine, and, therefore, the law does not contemplate using whiskey except in proper cases. If you conclude that the State has made out its case beyond a reasonable doubt, your verdict must be guilty. You are the judges of the testimony. It is for you to say what portions of the testimony you will believe. If, after viewing the testimony, you have a reasonable doubt, then you must give the benefit of that doubt to the defendant, and in that case your verdict must be not guilty.

The jury retired, and after remaining out a considerable time, returned into court and asked for further instructions on the law.

His honor said : "I charge you, gentlemen, that if the defendant sold whiskey more than one time on that prescription, and he admits that he did, your verdict should be guilty." The jury returned a verdict of "Guilty." The defendant moved for a new trial, which was refused. The court sentenced the defendant to

pay a fine of one hundred dollars, or be imprisoned. The defendant gave due notice of appeal, and served the exceptions to be found in the opinion of this court.

*Messrs. Hart & Hart,* for appellant.

*Mr. McDonald,* solicitor, contra.

April 28, 1890. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The defendant, appellant, a druggist in Yorkville, was tried for and convicted at the April term, 1888, of General Sessions, for the County of York, of selling whiskey to one John Robinson without a prescription from a practising physician.

He appealed upon the following exceptions: "1. For error in refusing to permit the defendant, on cross-examination, to ask the principal witness for the State questions concerning his character, calling, and general conduct as an informer in like prosecutions, for the purpose of affecting his credibility. 2. For error in directing the jury, that if the defendant was in possession of a prescription from a regular practising physician calling for the sale of three pints of whiskey, and he furnished no more than the quantity prescribed, but furnished it on two or more occasions, he had violated the act of December, 1884, amending section 1743 of the General Statutes. 3. For error in instructing the jury, that 'if a patient goes to a physician and says, "Doctor, I want whiskey; you must give it to me," and the physician, or apothecary either, gives the man whiskey simply to gratify his depraved appetite for whiskey, or mania for whiskey, he violates the law, clearly violates it'; thus impressing the jury that the violation of the law by the physician improperly giving a prescription, was a violation by the druggist or apothecary who sold under it. 4. For error in holding that the person who was prescribed for by the physician must be the person who presents the prescription and makes the purchase from the druggist." And the defendant now renews his motion for the new trial denied him in the Circuit Court.

How far a defendant may be indulged in the cross-examination

of a witness for the State, with the view of impeaching his credibility, is not clearly settled; we mean to say, that there is no clearly established rule defining the exact limit within which such cross-examination is confined. It seems that the matter is left very much in the discretion of the presiding judge, and each case must be governed by its own surroundings and facts. Any abuse of discretion on the part of the judge, of course, would be error, but such abuse should appear very clearly before the court of last resort would feel warranted in interfering. In this case, we do not find such abuse. On the contrary, we think the questions propounded were not only irrelevant to the matter at issue, but also as to the object to be accomplished thereby, and, therefore, they were properly excluded.

As to the second exception. It seems that the defendant was presented with a prescription from a regular practising physician, given to one John Jimmerson, for three pints of whiskey, upon which the whiskey was sold to one John Robinson, who, it seems, presented it, but the quantity of whiskey mentioned was not all furnished at the same time; it was furnished at three different times, a pint each time. His honor charged that this was a violation of the act, holding that the act allowed one sale only, and that here were three sales. Whether this charge was correct, depends upon the construction which shall be given to the act in question. The language of the act is as follows: "No druggist or apothecary shall sell more than one time upon the same prescription, whether the same shall direct more than one sale or not. * * * And if a sale be made a second time upon the same prescription, the druggist or apothecary so selling shall be deemed to have sold without any prescription." Now, what is the true intent of this act? · The legislature must have intended either that the patient could not buy on a prescription more than once, whether the prescription was filled as a whole at that time or not, or that the druggist could not sell more than one entire prescription on the same paper. That is, after it had been filled and furnished as a whole, he could not sell a second time thereon—whiskey being regarded as a medicine, useful in many complaints, and yet very dangerous and corrupting when used excessively merely as a beverage. The legislature, while not countenancing the lat-

ter use of it, yet, with the view to meet the wants and necessities of invalids and sick persons, passed the act above, so as to enable such persons to obtain it legally as a medicine only, and the act should be construed under the light of that purpose.

It is very clear that it was not the intent of the legislature that a prescription should be the means of allowing a party to procure whiskey to be used as a beverage, and hence it would be a violation of the law for one to file in the office of a druggist a prescription from a physician as a standing license to get whiskey in a certain quantity at any time he chose, and, no doubt, to prevent this, the act declared that there should be but one purchase on a prescription ; or, at least, this inhibition, as thus explained, would prevent the patient from getting any more whiskey than the prescription called for.   But we cannot suppose that it was the purpose of the act to require the patient to get the quantity prescribed—all of it—at one time.   With many persons, this might not be within their power, and yet their condition might demand it all, not immediately, but during their sickness ; and in such case why should not the patient be allowed to take a portion then pressingly needed, and afterwards to get the remainder as his continued sickness required ?   When a reputable physician prescribes a certain quantity of whiskey for his patient, the presumption certainly is, not only that whiskey is necessary, but that the quantity prescribed is also necessary ; and when no more than the quantity prescribed is furnished by the druggist, though this quantity may not all be furnished at the same time, we cannot think that in every such case the act has been violated.   True, if it should appear in any case that the prescription had been lodged not to be used to procure the whiskey as a medicine, but to get it at different times as a beverage, until the quantity was exhausted, and this was known to the druggist, this would be an evasion and subterfuge, amounting to a guilty violation of said act.

From these considerations, we think his honor construed the act rather too stringently when he ruled as he did.   We think that each case where the whiskey is furnished at different times should depend upon its own facts, and that it should be left to the jury to determine when whiskey is furnished under one and

the same prescription at different times, but yet no more is fur-
nished in all than the quantity called for, whether or not it was a
*bona fide* transaction or an evasion of the law, in whole or in part.

We do not think that the inference complained of, as following
what was said by his honor, specified in the third exception, is a
legitimate inference.

Nor do we find in the charge a foundation for the fourth ex-
ception.

It is the judgment of this court, that the judgment of the Cir-
cuit Court be reversed, and that the case be remanded for a new
trial.

MR. JUSTICE McGOWAN. I concur. An act making an of-
fence criminal should be strictly construed. The words are, "No
apothecary shall sell more than one time upon the same prescrip-
tion, whether the same shall direct more than one sale or not."
As it seems to me, the point is not whether the whiskey was deliv-
ered at different times, but whether there "was more than one
sale." The prescription called for three pints, which was sold at
"one sale," and delivered as required.

MR. JUSTICE McIVER. *dissenting.* I concur in the conclusions
reached by the Chief Justice, except upon the second ground of
appeal, and from that I dissent. It seems to me that the only
question is, whether the Circuit Judge erred in instructing the
jury, that if a druggist or apothecary sells spirituous liquor more
than one time on the same prescription, he violates the law, and
upon satisfactory proof to that effect he should be convicted. It
does not seem to me that there was any error in such instruction.
On the contrary, the statute expressly declares: "That no drug-
gist or apothecary shall sell more than one time upon the same
prescription. * * * And if a sale be made a second time upon
the same prescription, the druggist or apothecary so selling shall
be deemed to have sold without any prescription." Act of 1884,
18 Stat., 797. And the charge was precisely in accordance with
the statute. The fact that the prescription was for three pints of
whiskey, and that no more than that amount was sold under the
prescription, cannot affect the question, for the defendant himself

in his testimony says: "I sold whiskey on that prescription three times—one pint each time," and the charge as given was exactly applicable to that testimony.

I do not think that the statute can be construed as authorizing the sale of spirituous liquors, under a prescription for a specified amount, in fractional portions of that amount at different times, provided the whole amount sold do not exceed the amount specified. Such a construction would enable one, under a prescription for a quart, to obtain the liquor by the drink at such times as might suit his taste or convenience; and that was, doubtless, one of the very things which the statute was designed to prevent. In addition to this, under the former retailing law, which forbade the sale of spirituous liquors without a license in quantities less than three gallons, I think it was uniformly held that where one contracted for three gallons, with the understanding that it was to be delivered at such times and in such quantities as it might be called for, the law was violated. This is sustained by the authorities cited by the solicitor.[1]

I think, therefore, that the judgment of the Circuit Court should be affirmed.

Judgment reversed.

---

[1] Bish. Stat. Crimes, § 1013; *Murphy* v. *State*, 1 Ind., 366; *State* v. *Kirkham*, 1 Ired., 384.