### CURNOW v. PHŒNIX INSURANCE CO.

1. JURY TRIAL—CHALLENGE.—It is not error in a Circuit Judge to permit a party, in a civil cause, to challenge a juror, after the jury had been accepted and the pleadings began to be read, even when the juror challenged was one put on the panel in place of one previously challenged.
2. IBID.—TRIALS.—The conduct of a case in the empanelling of the jury must, of necessity, be left in a great measure to the discretion of the Circuit Judge.
3. WAIVER—EVIDENCE.—There was in this case some evidence that the defendant had waived his right to require a strict compliance with the "iron safe clause" in the policy, and the Circuit Judge properly submitted the question of waiver to the jury.
4. CHARGE.—The Circuit Judge was correct in refusing to charge the request of appellant as contained in the fifth exception, because it ignored the question of waiver.
5. PLEADING—DENIAL.—A denial by a negative pregnant of a material allegation in the complaint raises no issue, but is an admission of the substantial facts alleged.

Before GARY, J., Barnwell, March, 1895.    Affirmed.

Action by Sarah V. Curnow, as assignee of the fire insurance policy of A. J. Levy, against the Phœnix Insurance Company of Hartford, Conn., to recover $2,500 insurance on a stock of goods burned 18th. October, 1889, commenced May 12, 1890.

The presiding judge charged the jury as follows:

Mr. Foreman and gentlemen of the jury: This is a complaint on the part of the plaintiff to recover of the defendant, the Phœnix Insurance Company, the sum of $2,500 for damages alleged to have been sustained by her on the 18th. day of October, 1889, on a stock of merchandise which was covered by this policy of insurance. The plaintiff alleges in her complaint that she duly fulfilled all the

requirements of the contract on her part, and duly demanded payment of the said $2,500, her damages, and the said defendant denied liability under said policy. The defendant company files its answer and denies its liability now, and sets up as its defence that certain conditions of the policy, which are contained in the policy, have not been complied with on the part of the assured, and for that reason the insurance policy is rendered null and void. The clause which is set out in the answer, and of which you have heard so much, is called the "fire-safe clause." What is it? It is further agreed that the assured shall keep all purchases and sales, both for cash and for credit sales, together with the last inventory of stock, etc., all to be kept in an iron safe every night, otherwise this policy shall be void. I charge you, that this is a part of the contract of the insurance policy, and is binding upon the defendant; that upon that section of the contract the assured obligates herself to keep a set of books showing the record of his or her business, including all purchases and sales, both for cash and on credit. Now, you will see from that being a part of the contract of insurance, the first question which addresses itself to you, then, did the plaintiff, or did the assured, keep a cash book or a book showing his or her sales, both for cash and on credit? I charge you that, in order to enable her to recover under this policy of insurance, it was necessary for her to keep that book as it is agreed under this contract. It is not your province or mine, Mr. Foreman and gentlemen of the jury, to make contracts. It is our province to enforce them—those that they have made for themselves. Whether this be a good insurance contract or not, is not the question for you or for me. Parties have a right to make contracts, except those that are prohibited by law, or are opposed to public policy. Therefore, having entered into this contract, both parties are mutually bound by its terms. The question for reference to you, did the assured keep a cash book as agreed in that clause which I have just recited to you? that is the question of fact which you

are to decide. You have heard the testimony on it; you have heard read the affidavit of the agent of the assured, in which these terms have been read to you and with which you are familiar. On the contrary, you have heard the testimony of the agent, that some time subsequently he found a book, which was introduced in evidence, claimed by him to be the cash book kept in accordance with that clause in the contract. That book is in evidence, and I charge you, further, as a matter of law, that if that is the only book kept in accordance with that clause of the contract which I have read to you, that this book does not come up to the requirements of that insurance clause, for the reason that it is not such a book as would show the items of the cash sales as contemplated by this section; and in the light of the authorities which counsel have read, I charge you this book not to be such a cash book as that section contemplates.

I am requested by the defendant to charge you that "the jury are instructed that the plaintiff, Sarah V. Curnow, cannot recover in this action more than $600, and interest thereon at eight per cent. from the date of the loan by her to A. J. Levy, if the jury find any sum on this policy." I cannot charge you that. If she is entitled to recover, she is entitled to recover whatever is called for in this policy. Under deed of assignment, it assigns this policy to her, and entitles her to recover whatever amount is due.

2. "The jury are instructed that the defendant is only liable for three-fourths of the cash market value of the loss or damage, and before the recovery can be had for other than nominal damage, proof of the cash market value of the property damaged or destroyed, immediately preceding such loss or damage, must be produced to the jury." I charge you that is good law. That is part of the terms of the contract—that three-fourths of the cash market value of the loss or damage is all that the plaintiff can recover, if she can recover at all under this insurance contract, because that is stipulated under the amount of liability.

3. "The jury are instructed that the proof of loss required by the policy must contain a particular account of the loss, and if the proofs of loss fail to give a particular account of the loss, the proofs of loss are not satisfactory proofs of loss required by the policy, and the plaintiff cannot recover." I refuse to charge you that, upon the principle announced by our Supreme Court in the case of Copeland against the Western Assurance Company, that this is not set up as one of the defences set up in answer, and in order for him to get the benefit of that portion of the defence, the law of this State requires that it must be set up in the answer. I will read to you the summary of what our Supreme Court has said.

(1.) "That where the defendant claims that the plaintiff has not a right to recover on the policy of insurance, by reason of the fact that he failed to comply with the requirements of the policy, such objection must be set up in his answer to the complaint."

(2.) "That where the defendant sets up a defence in his answer that the plaintiff is barred of his right of recovery on the policy of insurance, by reason of his failure to perform certain things therein required to be done on his part, it is not incumbent on the plaintiff to introduce testimony showing such performances by him, and consequently a failure to introduce such testimony does not entitle the defendant to an order of nonsuit."

(3.) "That where the defendant sets up such defence in his answer, and the facts brought out during the plaintiff's introduction of testimony in chief show that there has not been performance by the plaintiff of such requirements of the policy, still the defendant would not be entitled to an order of the nonsuit, because such order would deprive the plaintiff of his right to show waiver or estoppel on the part of the defendant to make such objection."

That, then, is summed up in brief by our Supreme Court to be the law as to the defence set up.

4. "The jury are instructed that, under the contract of

insurance, the insurance company has the right to examine the books of account of the assured and make extracts from the same, and if the jury find from the evidence that the agent of the company demanded of the assured to see and examine the cash book, and the same was not shown for examination or for making extracts, if desired, and that this action was thereafter brought before the cash book was shown to the company's agent, then the plaintiff cannot recover." I refuse to charge you that, for the same reason assigned in refusing to charge you the request just above.

5. "The jury are instructed that the policy required the assured to keep a set of books showing a record of her business, including all purchases and sales, both for cash and on credit, as well as a copy of their last inventory, all to be kept in an iron safe every night, otherwise the policy shall be null and void; and if the jury find from the evidence that the agent and manager of the assured, under oath and examination under policy, deposed that the cash book containing the cash sales for the remainder of August, 1889—that is, August 2d., 1889, to October 18, 1889, inclusive—was in a wooden cabinet, and was burned in the assured's store on the night of the 18th. of October, 1889, then such fact, if true, is a valid defence to the defendant company, and plaintiff cannot recover." I refuse to charge you that, for the same reason that I refuse to charge you the former proposition.

6. "The jury are further instructed that, under this policy, obligation of the assured was to keep a set of books showing a record of his or their business, including all purchases and sales, both for cash and. on credit, and the jury are further instructed that the cash book put in evidence by the plaintiff as the cash book kept by the assured before the fire, inasmuch as it contains no items setting forth the goods sold in the alleged cash sales of the assured, is not such a record of the business of the assured, as to sales for cash, required by the terms of this policy, and plaintiff cannot recover." That I charge you to be the law,

as I have tried to explain to you in the foregoing part of my charge.

7. "The jury are instructed that, under this contract of insurance, it was the duty of assured, within sixty days before bringing suit, to have rendered to the company a particular account, and satisfactory proofs of loss, and if the jury find from the evidence that the proofs of loss sent the company by the assured are founded on estimated cash sales, not taken from the books of the assured contracted to be kept by the terms of the policy, then the jury are instructed that such proofs of loss do not satisfy the conditions of the policy, and if the insurance company, upon their receipt, pointed out the defect to the assured, and thereafter no other and satisfactory proofs of loss were furnished by the assured to the company within sixty days before bringing this action, then the plaintiff cannot recover." (This was not read to the jury, his honor saying: "The seventh is long, and I refuse to charge that, for reasons which I have written on the back of it." The reasons are as follows: "Refused, for the reason that the answer does not set up as a defence that the proof of loss was defective. See *Copeland* v. *Western Assurance Co.*, 20 S. E. R., 754—Gary.")

Now, the question of fact comes up before you, has the insurance company done any act by which it has waived its right to demand a strict construction of its contract? That is the question for you, whether or not there has been any waiver on the part of the insurance company to forfeit its right to a strict compliance on the part of the assured? That is the question of fact for you. That is the law as I construe it. You will take the record and find—if the defendant has not kept the books, yet, if the company has done something to waive its right to a strict compliance, then, I charge you, she can recover; but if the company has not done anything to forfeit its right, then he cannot come in and ask for a verdict at your hands. If you find for the plaintiff, you will say, "We find for the plaintiff" so many

dollars, writing it out in full.   If you find for the defendant, you will simply say, "We find for the defendant."

The defendant's eighth request is: "The jury are instructed that, under the contract of insurance, it was the duty of assured, within sixty days before bringing suit, to have rendered to the company a particular account and satisfactory proofs of loss; and if the jury find from the evidence that the proofs of loss sent the company by the assured are founded on estimated cash sales, not taken from the books of that assured, contracted to be kept by the terms of the policy, then the jury are instructed that such proofs of loss do not satisfy the conditions of the policy; and if the insurance company, upon their receipt, pointed out the defect to the assured, and thereafter no other and satisfactory proofs of loss were furnished by the assured to the company before or at the time of the assignment of the policy by A. J. Levy to the plaintiff, Sarah V. Curnow, or thereafter and within sixty days, before Sarah V. Curnow, plaintiff, brought this suit, then nothing was due at the time of its assignment to Sarah V. Curnow, and nothing passed to her by such assignment, and Sarah V. Curnow, plaintiff, cannot recover."   I decline to charge this request.   On the margin is written the following: "Objection not set up that proofs of loss were not furnished in sixty days."

*Verdict.*—"We find for the plaintiff the sum of twenty-five hundred dollars, and eight hundred and seventy-five dollars interest."

The defendant appeals on following exceptions:

(1.) The presiding judge erred in allowing the plaintiff, against objection of defendant, to challenge peremptorily the foreman of the jury appointed by the court, after the plaintiff and defendant had both stated that they had no further exception to the jury, and after the jury had been fully empanelled and the trial of the case proceeding.

(2.) The presiding judge erred in admitting, against the objection of defendant, the testimony of J. B. Reeves, witness for plaintiff, in following question and answer: "Q.

Is it usual to sign attachments to the policy except at the end of all the provisions thereof? A. No." The same being immaterial, incompetent, and irrelevant to prejudice of defendant.

(3.) The presiding judge erred in refusing a motion for nonsuit at the close of the plaintiff's case, which motion is renewed on appeal.

(4.) The presiding judge erred in not instructing the jury as prayed by defendant: "The jury are instructed that the proof of loss required by the policy must contain a particular account of the loss, and if the proofs of loss fail to give a particular account of the loss, the proofs of loss are not satisfactory proofs of loss required by the policy, and the plaintiff cannot recover."

(5.) The presiding judge erred in not instructing the jury as prayed by the defendant: "The jury are instructed that the policy required the assured to keep a set of books showing the record of her business, including all purchases and sales, both for cash and on credit, as well as a copy of their last inventory, all to be kept in an iron safe every night, otherwise the policy shall be null and void; and if the jury find from the evidence that the agent and manager of the assured, under oath and examination under policy, deposed that the cash book containing the cash sales for the remainder of August, 1889—that is, August. 2, 1889, to October 18, 1889, inclusive—was in a wooden cabinet, and was burned in the assured's store on the night of the 18th. of October, 1889, then such fact, if true, is a valid defence to the defendant company, and plaintiff cannot recover."

(6.) The presiding judge erred in not instructing the jury as prayed by defendant: "The jury are instructed, that under this contract of insurance it was the duty of the assured, within sixty days before bringing suit, to have rendered to the company a particular account, and satisfactory proofs of loss; and if the jury find from the evidence that the proofs of loss sent the company by the assured are founded on estimated cash sales, not taken from the books

of the assured, contracted to be kept by the terms of the policy, then the jury are instructed that such proofs of loss do not satisfy the conditions of the policy; and if the insurance company, upon their receipt, pointed out the defect to the assured, and thereafter no other and satisfactory proofs of loss were furnished by the assured to the company within sixty days before bringing this action, then the plaintiff cannot recover."

(7.) The presiding judge erred in charging the jury as follows: "Now, the question of fact comes up for you, has the insurance company done any act by which it has waived its right to demand a strict construction of its contract? That is a question for you, whether or not there has been any waiver on the part of the insurance company to forfeit its right to a strict compliance on the part of the assured. That is the question of fact for you."

(8.) The presiding judge erred in not charging the jury, as prayed by defendant, as follows: "The jury are instructed, that under the contract of insurance it was the duty of the assured, within sixty days before bringing suit, to have rendered to the company a particular account and satisfactory proofs of loss; and if the jury find from the evidence that the proofs of loss sent the company by the assured are founded on estimated cash sales, not taken from the books of the assured, contracted to be kept by terms of the policy, then the jury are instructed that such proofs of loss do not satisfy the conditions of the policy; and if the insurance company, upon their receipt, pointed out the defect to the assured, and thereafter no other and satisfactory proofs of loss were furnished by the assured to the company before or at the time of the assignment of the policy by A. J. Levy to the plaintiff, Sarah V. Curnow, or thereafter and within sixty days before Sarah V. Curnow, plaintiff, brought this suit, then nothing was due upon this policy at the time of its assignment to Sarah V. Curnow, and nothing passed to her by such assignment, and Sarah V. Curnow, plaintiff, cannot recover."

*Messrs. Bryan & Bryan* and *L. T. Izlar*, for appellant.

*Messrs. I. N. Nathans* and *Robert Aldrich*, contra.

March 11, 1896. The opinion of the court was delivered by

MR. JUSTICE GARY. This was an action on a policy of insurance for $2,500, issued on the 22d. day of February, 1889, by the defendant aforesaid, to Mrs. A. J. Levy, on a stock of merchandise contained in a store at Blackville, S. C.

On the 18th. day of October, the property covered by the policy was destroyed by fire.

The complaint alleges: 1. The incorporation of the defendant. 2. The issuing of the policy by the defendant. 3. Ownership of the insured and loss. 4. That the said Mrs. A. J. Levy duly fulfilled all the conditions of said insurance on her part, and more than sixty days before the commencement of the action gave the defendant due notice and proof of the fire and loss aforesaid, and duly demanded payment of said sum of $2,500. 5. Assignment of the policy and moneys due Mrs. A. J. Levy, to the plaintiff, Mrs. Sarah V. Curnow. 6. Non-payment of said loss.

The defendant by its answer denied "that said A. J. Levy fulfilled all the conditions of said insurance on her part, and more than sixty days before the commencement of this action gave to the defendant due notice and proof of the fire and loss thereunder," as alleged in paragraph V. of the complaint. It also alleges the following defence:

First. That said policy of insurance was issued and accepted by the assured, upon the express condition, covenant, and promissory warranty thereunder contained, to wit: "It is further understood and agreed, that the assured shall keep a set of books, showing a record of his or their business, including all purchases and sales either for cash or credit, as well as a copy of his or their last inventory, all to be kept in an iron safe every night, otherwise this policy shall be null and void."

Second. And the defendant alleges that the assured did not keep a set of books, showing a record of her business,

including all her purchases and sales both for cash and credit, as well as a copy of her last inventory, and did not keep all the books as aforesaid in an iron safe every night, during the continuance of said policy.

Third. And defendant alleges that on the night of the alleged fire, to wit: the 18th. of October, 1889, the cash book of the said assured, being one of the set of books showing a record of the business of said assured, including all purchases and sales both for cash and credit, was not kept in an iron safe of the said assured.

The case was tried before a jury, March, 1895, and a verdict rendered in behalf of the plaintiff for $2,500, and $875 interest. Judgment was duly entered upon the verdict, and the defendant appealed to this court, upon exceptions which will be set out in the report of the case.

The exceptions will now be considered, but not in the order in which they appear in the case.

*First Exception.* — The following statement of facts touching this exception appears in the "Case:" The case being called for trial, the jury was presented to respective counsel representing plaintiff and defendant; the plaintiff exercised the right of challenge by challenging the foreman of the jury. The defendant said they had no objection; thereupon the presiding judge appointed a foreman of the jury, and called the case for trial. Pleadings were about to be read, when plaintiff's attorneys asked of the court permission to exercise the further right of challenge. The court ruled that they could exercise a further right of challenge, whereupon defendant's attorneys excepted, on the ground that the plaintiff having announced his satisfaction with the jury as a panel, the court thereafter having appointed a foreman thereof, the jury was, under the practice of the court, fully empanelled; therefore, no further objection could be made or allowed by the court during the pendency of the case, except for cause manifested by the jury. Thereupon the plaintiff's attorneys challenged Mr. Browning, who had

been named as foreman of the jury by the court; the court allowed the challenge, and Mr. Browning stepped aside; thereupon defendant's attorneys excepted upon the grounds previously stated.    The defendant's attorneys, being asked by the court if they had any objection, replied: "That the jury had already been previously empanelled, and the defendant, under their view of the law and practice, had no right to make any further objections."    Whereupon the court announced that the defendant's attorneys, if they saw proper to make any further objections, had now an opportunity of doing so.    Section 2395 of the Rev. Stat. provides for the empanelling of juries Nos. 1 and 2 for the trial of causes in the Court of Common Pleas, and they are sworn immediately after being empanelled, and not in each case when thereafter called for trial.    This manner of empanelling a jury is, of course, different from that prescribed for the trial of cases in the Court of General Sessions.    Section 2404 of the Rev. Stat. is as follows: "In all civil cases, except in trial justice's courts, in which a jury shall be charged with any issue, each party shall have the right to challenge without cause therein two of the jury so empanelled, and the place· of the juror so challenged shall be supplied as provided by law.    The right of challenge shall extend to jurors drawn to fill the places of those challenged, provided the party challenging has not already exhausted the number of challenges allowed by law.    As a juror is challenged, his place shall be filled by another juror before the challenging is further proceeded with.    The plaintiff may first challenge one juror, then the defendant, and so on alternately until each party has made two challenges."    The amendment to the statute in 1882 makes this case very different from those relied upon by the appellant's attorneys, which were decided before said amendment.    Before the amendment neither the plaintiff nor defendant were allowed to challenge peremptorily a juror who did not belong to the original panel, but was called to fill a vacancy caused by the challenge of the

other party.    No reasons were set forth  why the presiding judge allowed  the  plaintiff to challenge  Mr.  Browning as a  juror, and in  the  absence  of a  contrary showing this court must presume that it was done in the proper exercise of his  discretion.    Furthermore, we do  not  see  how  the defendant  was  prejudiced  in  any  manner  whatsoever by the action of the Circuit  Judge, when it had full  opportunity  to  challenge  the  juror  drawn  in  the  place  of Mr. Browning,  and  did  not  see proper to make  any objection to him or any other juror on the panel.    The conduct of a case  in  the  empanelling  of  the  juries  must,  of  necessity,  be  left in a great  measure to the  discretion of the Circuit Judge.    This  exception is overruled.

*Seventh Exception.*—This  exception  raises  the  question as  to the *waiver* on the part of the defendant, to insist upon a·compliance with certain requirements of the policy.

J. H. Levy testified: "Q. Did you give notice after the fire to the agent of the loss?    A. Yes, I think I did; he was there at the time himself.  Q.  He was there at the time of the fire himself?  A.  I think he was there at the fire. Q. Did  the  company  send anybody  down  there after the fire, and after they gave notice to the company?  A. I think after ten days, or somewhere  along  there, some  one came, if I understand aright, from  Atlanta.    I  don't  know  who the party was he claimed to represent, or to be an  adjuster of the company—the  insurance  company.   Q.  Did  he do anything  about the loss?   A.  He  looked  over the books, and required me to give him certified copies of all bills we bought, and he got them.   Q.  Did you give  him the bills and vouchers?  A.  Yes, sir; if I can remember rightly, I did, for I got them myself, and I gave  them  to him.    I had to write for them.   Q.  Did  anybody  else  come  down  representing  the  company?   A.  Yes, sir, some time after Mr. Raine came down."

When the proofs of  loss were forwarded to the insurance company they were not returned, but the defendant denied liability because of  the  alleged  violation  of  the  "iron safe

clause" in the policy, thus making it impossible for the
assured, as defendant alleged, to render a correct statement
of the loss or furnish all books relating to the conduct of
her business.    It is true, that J. H. Levy had made and
delivered to J. S. Raine, the adjuster of the insurance com-
pany, an affidavit that the cash book was not in the safe at
the time of the fire, but J. H. Levy testified that when he
made the affidavit, Raine said it would facilitate them in
getting their money, and that it would not hurt him.    J.
H. Levy also testified: "After signing that (the affidavit), I
went down to the store again and we found one of the cash
books, and I carried it up and said to Mr. Raine: 'Now,
notice this since you have got that; just make a note in the
bottom of it that this cash book has been presented to you
up to date, whatever it was.'    And he said, 'that is all
right.'"    There was testimony that the other cash book
was afterwards found, and was in the safe at the time of
the fire.    If Raine made the statements which Levy says
he did, then they were evidence that the defendant *waived*
strict compliance with the aforesaid requirements of the
policy; and whether he made the statement, was also a
question of fact for the jury.    The jury had the right to
take into consideration, also, the conduct of the defendant,
after knowledge, as it supposed, that the cash book was
burnt, in determining the question of *waiver.    Charleston
Ins. Co.* v. *Neve,* 2d Md., 237; *Stepp* v. *Nat. Ass'n,* 37 S.
C., 417; *Dial* v. *Mut. Life Ass'n,* 29 S. C., 560; *Copeland*
v. *Western Assurance Co.,* 20 S. E. R., 754.

*Second, Third, and Fourth Execeptions.*—These three ex-
ceptions are not discussed in the arguments of appellant's
attorneys, because, we presume, either they are not insisted
upon or they supposed the questions raised by them are
embraced in the other exceptions.    The court, however, is
of the opinion that they cannot be sustained.

*Fifth Exception.*—The presiding judge did not charge the
jury as requested, but did charge them as follows: "The
defendant company files its answer and denies its liability

now, and sets up as its defence that certain conditions of the policy * * * have not been complied with on the part of the assured, and for that reason the insurance policy is rendered null and void.  The clause which is set up in the answer, and of which you have heard so much, is called the 'fire safe clause.'  What is it?  'It is further agreed that the assured shall keep all purchases and sales, both for cash and for credit sales, together with the last inventory of stock, &c., * * * in an iron safe every night; otherwise this policy shall be void.'  I charge you that this is a part of the contract of the insurance policy, and is binding upon the defendant.  That under that section of the contract the assured obligates herself to keep a set of books showing the record of her business, including all purchases and sales, both for cash and on credit.  Now, you will see from that being a part of the contract of insurance, the first question which addresses itself to you, then, is, did the assured keep a cash book, or a book showing her sales, both for cash and on credit?  I charge you that, in order to enable her to recover under this policy of insurance, it was necessary for her to keep that book, as it is agreed under this contract. * * * Now, the question of fact comes before you, has the insurance company done any act by which it has waived its right to demand a strict construction of its contract?  That is the question for you, whether or not there has been any waiver on the part of the insurance company to forfeit its right to a strict compliance on the part of the assured?"  His honor refused to charge the request in the exact words, because it ignored the question of *waiver*.  This exception is overruled.

*Sixth and Eighth Exceptions.*—These exceptions will be considered together.  The fourth paragraph of defendant's answer is as follows: "They deny that said A. J. Levy 'duly fulfilled all the conditions of insurance on her part, and more than sixty days before the commencement of this action gave to the defendant due notice and proof of the fire and loss thereunder,' as alleged in paragraph five," &c.

This form of denial is termed a negative pregnant, of which
Mr. Pomeroy, in Rem. & Rem. Rights, section 618,
says: "Such denial is one pregnant with the admis-
sion of the substantial fact which is apparently con-
troverted; or, in other words, one which, although in the
form of a traverse, really admits the important fact con-
tained in the allegation. * * * Denials in the form of a
negative pregnant arise (1) when the allegation is of a
single fact, with some qualifying or modifying circum-
stances, and the traverse is *in ipsis verbis*, using exactly the
same language, and no more; (2) when the allegation is of
several distinct and separate facts or occurrences connected
by the copulative conjunction, and the traverse is *in ipsis
verbis* of the same facts and occurrences, also connected by
the same conjunction. In most of the reported decisions
the courts have held such form of denial to be insufficient,
and have declared that they raised no issues, treating the
statements of the complaint or petition as actually admit-
ted. This was the universal rule under the old system;
and as it was not based upon any merely technical reasons
or doctrine of pleading, the same rule is properly followed
under the Codes." The same author, in section 619, says:
"In an action upon a fire policy against insurers, the de-
fendants moved for leave to file an amended answer. In
denying this motion, the court said: 'The denials are all
liable to the objection that they are negatives pregnant.
The complaint avers that on a particular day the property
was all destroyed by fire. The answer denies this in the
very words of the complaint. Such a denial is a negative
pregnant with the admission that it may have been de-
stroyed on some other day, and that a part may have been
destroyed on the day named. Such denials have always been
held insufficient.' A complaint alleging 'that the proofs of
loss were filed with the secretary of the defendant on the
31st. of March, 1866'—the denial was, 'that the proofs were
filed *as alleged in the complaint.*' This was declared to be
pregnant with the admission that they were filed on an-

REP.]                    November Term, 1895.

other day, within the time required." See, also, vol. 1 Enc. Pl. & Pr., page 796. But, waiving all objections to the manner in which the allegations of the complaint are denied as aforesaid, the requests mentioned in these exceptions were objectionable on the ground that they ignored the question of *waiver.* See authorities *supra.*

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.