12559

CALHOUN *ET AL.* v. ANDERSON *ET AL.*

(146 S. E., 245)

Before GRIMBALL, J., Georgetown, November, 1925.

*Messrs. Spears & Want,* for appellants,

*Mr. Maham W. Pyatt,* for respondents,

January 14, 1929.

The opinion of the Court was delivered by MR. ACTING JUSTICE C. J. RAMAGE.

This is an action for the enforcement of the statutory liability of the stockholders of People's Bank of Georgetown, S. C. The summons and complaint are dated March 5, 1925. The present appeal involves the liability of the defendant Mayde M. Andrews, and the sole question presented by this appeal is whether or not, at the time People's Bank of Georgetown, S. C., suspended business, this defendant was a stockholder of the bank, and as such liable to the depositors of the bank for the amount of the stock alleged to have been owned by her.

The case was tried before Hon. W. H. Grimball, presiding Judge, and a jury, at the November term of the Court of Common Pleas of Georgetown County, and a verdict was rendered in favor of the defendant. Judgment was entered upon this verdict, and the appeal is from such judgment, and from rulings of the Court during the course of the trial.

## PLEADINGS

The complaint is in the usual form of an action against the stockholders of a closed bank. It sets out the incorporation of the bank, the suspension of business of the bank, the insolvency of the bank, the names of the stockholders appearing upon the bank's records, with the amount of stock owned by each, etc. The action is brought on behalf of the plaintiffs named, as depositors of the said bank, for the benefit of themselves and of all other depositors of the bank. Attached to the complaint is an order providing for the custody of the funds collected in the action, and for the handling of transactions with the defendant stockholders.

An answer was filed by a large number of defendants including the present respondent, setting up various defenses. Upon motions made as against the defendants other than the present respondent, the said defenses were striken out for the most part, and settlements were made by or judgments entered up against the answering defendants other than the respondent herein. The respondent relied upon a special and additional defense, however, that she was not a stockholder of People's Bank of Georgetown, S. C., at the time the bank closed its doors, and challenged the correctness and validity of any entries upon the books of the corporation showing the contrary. By agreement of counsel, the case went to trial on this single issue.

In connection with the drawing of the jury, the transcript of the proceedings at the trial shows the following:

"Mr. Want: If any of the jury panel are stockholders in any closed bank in South Carolina and are now defendants in an action pending against them for their statutory liability, then we think that clearly disqualifies them.

"The Court: I refuse to ask that question of the jurors.

"The Court (addressing the jurors): Are any of you stockholders of the People's Bank of Andrews? (No answer.)

"Q. Are any of you depositors in the People's Bank of Andrews? (Three answered that they were.)

"Q. Are any of you borrowers of People's Bank of Andrews? (None answered.)

"Q. Are any of you jurors borrowers of Andrews Bank & Trust Company? (None answered.)

"Q. Were any of you gentlemen depositors in the People's Bank of Georgetown at the time it failed? (Two answered that they were.)

"The Court: I think these two would be disqualified.

"Q. Are any of you gentlemen stockholders in Andrews Bank & Trust Company? (None answered.)"

It was impossible to go on with the selection of a jury in this case, due to the fact that one jury was out and the fact that certain of the remaining jurors were disqualified to sit on this case, so the Court suspended for a few minutes waiting upon the other jury to return. The jury comes out in the case of *Jayroe v. Swinnie* and permits the trial of the case to go on. The Court then asked those jurors the following questions:

"Q. Are any of you depositors in the People's Bank of Georgetown—were you depositors in the bank at the time it closed? (None answered).

"Q. Are any of you stockholders in the Bank of Andrews or Andrews Bank & Trust Company? (None answered.)

"Q. Are any of you borrowers from the Bank of Andrews or Andrews Bank & Trust Company? (None answered.)"

A jury is then drawn for this case. The jury having been thus impaneled, the case proceeded to trial.

Plaintiff appeals on three exceptions:

The first of the exceptions alleges error, in that the Circuit Judge refused to ask jurors the question whether any of them are now defendants in an action pending against them for their statutory liability as stockholders of any bank.

The second exception relates to the following question asked a witness on cross examination: "Wouldn't it have been natural for the stock to have been handed Mr. Andrews to carry off?"

The third exception relates to the refusal of the Judge to charge plaintiff's request No. 1.

To have asked the jurors if any of them were defendants in stockholders' liability suit would have been clearly improper for several reasons: First, such a suit would have had absolutely nothing to do with the suit at bar. If an action was brought against a defendant on a note, it would clearly be improper for the Judge to ask if any of the jurors were defendants in an action

upon a note. To have disqualified a juror in the present case because he might have been sued as a stockholder in another bank would have been clearly erroneous; this certainly was not prejudicial to the defendant, because, if a stockholder had been compelled to pay his stockholder's liability, it would have been no more than natural for him to have desired that all parties should pay theirs.

Besides, such jurors cannot be held to be legally disqualified. The distinction is clearly stated in the case of the *State v. Robertson,* 54 S. C., 147, 31 S. E., 868, between jurors who are legally disqualified and those who, for a reason not affecting their qualification to serve, are held by the Presiding Judge, in the exercise of his discretion, to be not indifferent. These jurors were not legally disqualified, and therefore it was up to the Presiding Judge, in the exercise of his discretion, to decide whether or not they were indifferent. The case of *State v. Roberston,* in which the opinion of the Court was written by Chief Justice McIver, holds as follows: "The Circuit Judge, who was vested with authority to determine the question as to whether he was indifferent in the cause, has determined that he was a competent juror; and his determination of this question of fact cannot be reviewed by this Court." *State v. Robertson,* 54 S. C., 152, 31 S. E., 870.

Therefore, when the Judge refused to ask the question whether any of the jurors were defendants in a stockholders' action, he held, as a matter of fact, that, even if any of the jurors were defendants in such suits, this would not disqualify them; and, having decided this question of fact, it being strictly within his discretion, it cannot be reviewed by the Supreme Court, no abuse of the same being shown.

Section 577 of the Code of Civil Procedure is as follows:

*"Jurors May Be Examined by Court—If Not Indifferent, Shall Be Set Aside.—*The Court shall, on motion of either

party in the suit, examine, on oath, any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the Court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause, and another shall be called."

We do not see where His Honor violated any of the provisions of this section. It would have been just as reasonable, in a suit on a promisory note, to have asked prospective jurors if any of them are now defendants in actions on promisory notes, as to have required the Circuit Judge to put the question we are now considering.

The second exception relates to the question asked witness Orvin on cross examination.

In the first place, the question asked was one of those things which nearly appear to be self-evident; there would hardly be any disagreement about the matter; also it does not appear that this piece of testimony would have been of vital importance in the case, one way or the other.

Again, this question was put to the witness on cross examination; and it has been held time and time again, by this Court, that the limits of cross examination are within the discretion of the Trial Judge.

"The limits of a cross examination are within the discretion of the Presiding Judge, and this Court will not interfere with his rulings unless there has been an abuse of discretion, which has not been made to appear in this case." *State v. May*, 33 S. C., 39, 11 S. E., 440; *Martin v. Jennings*, 52 S. C., 371, 29 S. E., 807; *Wilson v. Moss*, Receiver, 79 S. C., 120, 60 S. E., 313.

Again, in the case of *Barrineau v. Electric Co.*, 81 S. C., 20, 61 S. E., 1063, Justice Gary delivered the opinion of the Court as follows: "An additional reason why the first

exception cannot be sustained is that the question was asked upon cross examination, the limits of which are within the discretion of the Presiding Judge, and the Court will not interfere with his ruling, unless there is an abuse of discretion, which has not been made to appear in this case." *Wilson v. Moss,* 79 S. C., 120, 60 S. E., 313; *Barrineau v. Electric Co.,* 81 S. C., 20, 61 S. E., 1063.

It is clear, therefore, that this exception cannot be sustained. In the case of *State v. May,* 33 S. C., 39, 11 S. E., 440, Chief Justice Simpson delivered the opinion of the Court. He uses the following language: "We mean to say, that there is no clearly established rule refining the exact limit within which such cross examination is confined. It seems that the matter is left very much in the discretion of the Presiding Judge, and each case must be governed by its own surroundings and facts. Any abuse of discretion on the part of the Judge, of course, would be error, but such abuse should appear very clearly before the Court of last resort would feet warranted in interfering." *State v. May,* 33 S. C., 39, 11 S. E., 440.

Before a party can secure a reversal for failure to charge a specific request, three things must appear:

(1) The request must contain a sound proposition of law, and must not be misleading; (2) the request must be responsive to some issue made by the pleadings (*Richey v. Southern R. Co.,* 69 S. C., 387, 48 S. E., 285); and (3) there must be some foundation in the testimony (*Hicks v. Southern Ry.,* 63 S. C., 559, 41 S. E., 753.) The matter of charging the jury any particular proposition of law ought to be left to the sound discretion of the Presiding Judge, unless the three requisites above mentioned concur.

This question is the same in principle as the reception of testimony in support of irrelevant allegations left in a pleading. It has been held in *Carter & Co., v. Kaufman,* 67 S. C., 456, 45 S. E., 1017, and in *Colvin v. McCormick Cotton Oil Co.,* 66 S. C., 61, 44 S. E., 380, that it is not error in

a Judge to admit evidence in response to irrelevant allegations allowed to remain in a pleading, but it was further held in *Martin v. Railway*, 70 S. C., 8, 48 S. E., 616, and *Bromonia v. Drug Co.*, 78 S. C., 482, 59 S. E., 363, that the Judge has a right to exclude testimony in response to an irrelevant allegation allowed to remain in a pleading.

The case of *James v. Mickey*, 26 S. C., 270, 2 S. E., 130, seems to recognize the principle that many things in charging the jury are left to the discretion of the Judge. "Request to charge properly refused which confined the issues within too narrow limits. *Bickley v. Commercial Bank*, 39 S. C., 281, 17 S. E., 977, 39 Am. St. Rep., 721 : "Where a request to charge ignored the question of waiver, there is no reversible error in refusing to charge it." *Curnow v. Ins. Co.*, 46 S. C., 79, 24 S. E., 74.

In the first place, this request was incorrect and improper, because it had a tendency to mislead the jury. From the use of the words, "book entries relied on by the plaintiffs in this case were made unlawfully, or without authority," the jury would have been instructed to find for the plaintiffs unless the evidence showed that the book entries were made unlawfully or without authority. The jury might have understood, and probably would have understood, from this request, that they were compelled to find for the plaintiffs, unless the evidence showed them that the book entries were unlawfully made or made without the authority of Mr. Andrews, who held the stock. This request was clearly improper, unless it had been qualified by putting the word "the" before the word "authority," and putting after the word "authority," the words "of defendant"; in other words, to have been proper, the request should have been framed as follows : "That the book entries relied upon by the plaintiffs in this case were made unlawfully, or without the authority of the defendant."

Mr. Andrews was the owner of the stock, and he had a right to assign the stock to whom he pleased, and, upon

his delivering to the bank his stock, properly signed, the bank would have authority to enter the stock in the name of the assignee. But the assignee would not be charged with stockholders' liability unless he or she had assented to such transfer. To have charged the request would have been clearly to have misled the jury; the charge was clearly improper, because it did not make any distinction between the right of Mr. Andrews, the holder of the stock, to authorize its transfer, and Mrs. Andrews' acceptance or knowledge of the transfer.

The Judge understood this clearly, because he covered the matter in his general charge. He charged as follows: "I charge you, now, that where the depositors in a bank which had failed and is insolvent find on the stock certificate book of the bank the fact that stock stands in the name of a party, that the burden is on that party to whom the stock certificate has been issued, to show that he or she is not liable under Article 9, Section 18, of the Constitution. So that in this case, it being undisputed that at the time of the closing of the bank a stock certificate had been issued to the defendant, the burden is on the defendant to show that she is not liable under this provision of the Constitution."

Also this matter was clearly covered when the Circuit Judge charged the appellants' requests Nos. 2, 3, and 4. In request No. 4, the Circuit Judge charged: "The defendant is liable, if you are satisfied that the transfer of the stock in question to the defendant was made with her knowledge or consent, whether personally or by her agent; or that she had knowledge of the transfer after it was made, and took no action in respect to the same; or that the party who made the transfer, though having no specific authority in the premises, was acting in pursuance of an authority exercised by him over the affairs of the defendant generally, with her kowledge and acquiescence."

Also in request No. 2, the Circuit Judge charged: "If the defendant, prior to the closing of the People's Bank of Georgetown, had knowledge of the fact that, according to the records of the bank she was a stockholder thereof; or if, before such closing, she had such information as would lead a reasonably prudent person to infer that her name was recorded in the records of the bank in the list of stockholders, she is liable."

Also in request No. 3, the Judge charged: "The defendant is liable, as a stockholder of the People's Bank of Georgetown, even if the stock in question was transferred to her without her knowledge and consent, if such transfer was made by her husband, acting as her agent, and as such agent, either had actual authority from her to make the transfer, or in so doing so acted in accordance with the usual course of business between the parties."

The plaintiffs in this case, in their request to charge No. 1, have lost sight of the difference between the mere transfer of the stock on the books of the bank, and the imposition of the liability attached to a stockholder.

In the case of *Williams v. Vreeland,* 250 U. S., 299, 39 S. Ct., 439, 63 L. Ed., 991, 3 A. L. R., 1038, Justice McReynolds, in delivering the opinion of the Court, uses the following language: "In *Keyser v. Hitz,* 133 U. S., 138, 10 S. Ct., 290, 33 L. Ed., 531, which involved the liability of a married woman for an assessment levied against National Bank stockholders, speaking through Mr. Justice Harlan, this Court approved a charge: "If the stock in controversy was transferred upon the books of the German-American Savings Bank to and in the name of the defendant without her knowledge and consent, she was entitled to a verdict, unless she subsequently ratified and confirmed such transfer,' And it was further said: 'We must not be understood as saying that the mere transfer of the stocks on the books of the bank, to the name of the defendant, imposed upon her the individual liability attached by law

to the position of shareholder in a National Banking Association. If the transfers were, in fact, without her knowledge and consent, and she was not informed of what was so done—nothing more appearing—she would not be held to have assumed or incurred liability for the debts, contracts, and engagements of the bank.'"

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE, and STABLER concur.