## SANTEE RIVER HARDWOOD CO. v. HYMAN.

### C. A. 720.

District Court, E. D. South Carolina, Florence Division.

May 15, 1942.

Henry E. Davis, of Florence, S. C., and Waring & Brockinton, of Charleston, S. C., for plaintiff.

Wm. H. Smith and H. E. Yarborough, Jr., both of Florence, S. C., for defendant.

TIMMERMAN, District Judge.

This cause is before me to hear the motion of the plaintiff "for an order referring this cause to a master to take the testimony and report it to the Court."

The plaintiff asserts ownership and possession of a certain tract of land situate in Florence County, South Carolina, and within the jurisdiction of this court, containing 2,172 acres, more or less, which, according to plaintiff's allegations, is bounded on the "West by lands of the estate of N. S. Gibson and George H. Hyman," the last of whom is the defendant herein.

The plaintiff traces its title to this tract of land "by an unbroken chain of title to a general warranty deed from N. S. Gibson and J. K. Gibson to Benjamin F. Newcomer, dated March 2, 1877 and recorded March 6, 1877 in Book H. H., page 30, office of the Clerk of Court for Marion County", and then alleges that the defendant acquired title to lands lying to the west of plaintiff's said tract under the will of the said N. S. Gibson, one of plaintiff's predecessors in title.

The plaintiff alleges that the dividing line between it and the defendant was established and marked by a blazed line during the life of defendant's testator, N. S. Gibson, which line, "so established and marked, has been recognized and followed ever since"; and that the defendant is groundlessly "asserting that the line so established and marked on the ground is not the true line of division between the lands of plaintiff and of said defendant", and is asserting a claim to a "large section" of plaintiff's property.

Further it is alleged, in paragraph 6 of the complaint, that "the defendant has actually trespassed upon plaintiff's property; has annoyed, harassed and embarrassed the plaintiff in conducting its logging operations on its property; has cast a cloud on plaintiff's title to a considerable portion of its property; and has thus seriously interfered with plaintiff in the use and enjoyment thereof, and in securing the full market value thereof."

In the 7th and last paragraph of the complaint, the plaintiff avers "That the aforesaid acts on the part of the defendant are continuous and repetitious, and the plaintiff has no adequate remedy at law to prevent them; and unless this Court, sitting in equity, affords it relief by injunction, it will suffer irreparable loss and damage."

The defendant answered admitting, inter alia, that the plaintiff owns the tract of land claimed by it, but denying that the boundary line between his and the plaintiff's land is as alleged in the complaint. Specifically the defendant alleges "that the blazed line which plaintiff sets out in paragraphs 4 and 5 of the complaint was recently made either by the Atlantic Coast Lumber Corporation or by the plaintiff as

he is informed, and is not the true line of division between the lands of plaintiff and defendant, but on the contrary, that the true line is the high water mark of the Great Pee Dee River."

Furthermore, the defendant denies the allegations of paragraphs six and seven of the complaint quoted above. In other words, the defendant contends that the plaintiff has an adequate remedy at law.

In his answer the defendant also sets out the chain of title of the plaintiff, showing that Newcomer conveyed the tract now owned by plaintiff to C. A. Woods and S. U. Davis, who in turn conveyed the same to the Atlantic Coast Lumber Corporation, which corporation is the grantor of the plaintiff, and that the deed from the Lumber Corporation to plaintiff was executed December 11, 1941.

Further the defendant alleges that the deed from the Gibsons to Newcomer, executed in 1877, only conveyed "all of the swamp lands designated as such on a plat of a tract of land surveyed by Hugh Godbolt, deputy surveyor, on the first day of October, 1839, and designated on a plat certified by George W. Earle, December 10, 1866 as High Swamp 1783 acres, High Swamp 436 acres, Low Swamp 1649 acres and Low Swamp 614 acres", and that the deeds from Newcomer to Woods and Davis and from Woods and Davis to the Atlantic Coast Lumber Corporation described said premises in substantially the same language.

According to the defendant's contention the western boundary of plaintiff's tract of land, as fixed in the deed of the Gibsons to Newcomer, "is the high water mark of the Great Pee Dee River, and not the blazed line mentioned in the complaint, which blazed line is altogether, or in most instances, on a bluff on the land of the defendant and well above any swamp of any description."

In his cross-complaint the defendant repeats the substance of the foregoing allegations, and further alleges that either the plaintiff or its immediate predecessor in title, Atlantic Coast Lumber Corporation, had erroneously caused the alleged "blazed line" to be marked on the ground as a boundary between the two properties at about the time plaintiff took title from the Lumber Corporation; that "the high water mark of the Great Pee Dee River is the true boundary", and that the line attempted to be established by the plaintiff, or the

Lumber Company, is "far to the west of said high water mark and in many instances ran well up on a bluff on land belonging to defendant."

Then follows allegations to the effect that the plaintiff has trespassed upon defendant's land, cast a cloud on his title thereto and seriously interfered with the use and enjoyment thereof. These claimed wrongs are alleged to be "continuous and repetitious." The defendant prays that the land line be established and that the plaintiff be enjoined from trespassing on his lands.

The plaintiff, replying to the cross-action of the defendant, denies certain allegations thereof, admits others and claims that the "high water mark of the Great Pee Dee River" is the same as the alleged "blazed line."

The case discloses a typical land line dispute. The issue raised is narrow. By its reply to the cross-complaint of the defendant, the plaintiff admits that the true boundary line between the properties in question is the high water mark of the Great Pee Dee River. Therefore the primary issue for settlement herein is the correct location of the high water mark. The answer to other questions will follow, as a matter of course, the settlement of the boundary dispute. The other questions must await the settlement of this issue.

It is apparent from the pleadings that the contending parties have different ideas as to where lies the true boundary line. At least one of them is wrong. The land lying between the two contended for lines is in dispute,—each side claims it.

The plaintiff contends that the defendant is not entitled to a jury trial because he admits that he and the plaintiff claim from a common source; and that no issue of paramount title can arise where the parties claim from a common source of title. I cannot subscribe unqualifiedly to this doctrine. Here both the plaintiff and the defendant are claiming the same strip of land, alleged by the plaintiff to be "a large section of property." Obviously some one has the paramount title, or the highest ranking claim, to this large section of property. As I read the pleadings, each of the parties is asserting such a title or claim, regardless of the source of title.

It is true that in certain cases it has been held that there is no issue of paramount title for settlement by a jury where the

·contending parties claim under the same written instrument, as a deed or will. Such a case was Wolf v. Hayes, 161 S.C. 293, 159 S.E. 620. There all parties to the action ·claimed under a common deed. On one hand it was contended that the deed should be reformed. If the deed had been reformed, it would have affected the ratio of division among the parties in interest. Whether or not the deed was reformed, the parties remained tenants in common. The action was for partition, an equitable proceeding, and the right to a partition of the premises would not have been defeated ·even if the deed had been reformed. In the present action the plaintiff's suit for injunction will be defeated, if it has no title to the premises in dispute.

The case of Aiken Mortgage Co. v. Jones, 197 S.C. 245, 15 S.E.2d 119, relied on by the plaintiff, has little in common with this ·case. That case was a suit for specific performance of a contract, admittedly an equitable proceeding. The defendant ·denied plaintiff's title to the real property which it had contracted to sell the defendant and the defendant had agreed to buy, and demanded a jury trial as a matter of right on the issue of plaintiff's title. The court held, that since the defendant had not ·set up paramount title in himself, only that plaintiff did not have good title, the issue thus made was incidental, and a trial by jury as a matter of right was denied the defendant.

The cases of Uxbridge v. Poppenheim, 135 S.C. 26, 133 S.E. 461, and McRae v. Hamer, 148 S.C. 403, 146 S.E. 243, on first consideration, might appear to give support to plaintiff's contention, but a careful consideration of them will dissipate that idea.

In the Uxbridge case the plaintiff sought and obtained the aid of the court of equity on allegations that the line in question had "never been definitely established by either of the parties" to the action, and that the defendant had refused to cooperate with the plaintiff in locating the true line although frequently requested so to do. This case was decided by a divided court, but there was no difference concerning the doctrine announced in McCreery Land & Inv. Co. v. Myers, 70 S.C. 282, 49 S.E. 848, cited below.

The decision in the McRae case, supra, although written by the same learned judge who wrote the opinion in the Uxbridge case, was not rested upon the authority of the Uxbridge case. In fact the equities in the McRae case were notably stronger. It was alleged that the defendant had obliterated and destroyed the original land line, the marks, trees and monuments evidencing its existence. Then too, as stated by the court, there was cause for the intervention of equity to prevent a multiplicity of suits. Like allegations form no part of the pleadings in this cause. In the McRae case [148 S.C. 403, 146 S.E. 245] the court unequivocally recognized the right to a jury trial on "questions of title or right of possession."

The court in McCreery Land & Inv. Co. v. Myers, supra [70 S.C. 282, 49 S.E. 849], said: "A mere confusion of boundaries of land is not sufficient to give a court of equity jurisdiction. There must be some equity in addition thereto. If the ordinary legal remedies are adequate, they must be resorted to. * * *"

Also: "The complaint in this [case] is substantially an action to recover possession of a strip of land in the possession of the defendants, claiming title."

In Cooper River Timber Co. v. Cone, 181 S.C. 288, 293, 187 S.E. 341, 344, the plaintiff claimed, as here, that a boundary line had been agreed upon and disregarded by the defendant. The defendant denied this allegation and alleged that the true boundary line was at a place other than that claimed by the plaintiff. Commenting upon this situation the court said: "There is clearly tendered by the pleadings the issue of title as to the lands lying within these disputed lines, such issue arising upon the pleadings."

The court then went on to hold that the issue of who owned the land between the disputed lines was one for settlement by a jury.

In the Cooper River Timber case the plaintiff asked for an injunction just as the plaintiff in this case is asking for one, but it was recognized that the right to the injunction could not be determined until the legal issue of title had been settled. Said the court: "Should the jury find that the plaintiff's contention as to that [the boundary line] is true, then the equitable remedy of injunction would follow. The contention of the appellant, that the cause is one solely in equity, is not sustained."

While it is true that a suit for injunction invokes the equitable jurisdiction

of the court, yet if the defendant claims paramount title to the land in dispute and the subject of the equitable proceeding, which title if confirmed in the defendant would defeat the equitable remedy of injunction, then the issue of title should be tried first, and it is a legal issue to be tried by a jury. Sale v. Meggett, 25 S.C. 72; Alston v. Limehouse, 61 S.C. 1, 39 S.E. 192; Southern Railway v. Howell, 89 S.C. 391, 71 S.E. 972, Ann.Cas.1913A, 1070.

The main distinction between this case and the case of Santee River Cypress Lbr. Co. v. Elliott, 153 S.C. 179, 150 S.E. 683, 689, lies in the fact that in that case the plaintiff asked damages for the trespasses alleged. In it the issue of title, to be determined in part at least by locating the "high water mark" boundary, was regarded as a legal issue to be tried by a jury.

The plaintiff prays for an injunction against the defendant, and the defendant prays for one against the plaintiff. Both cannot have it. The question of which, if either, is entitled to an injunction can be settled only after determining the dispute between them as to which one owns the land. That issue should be decided by a jury; and the motion for an order of reference is refused.

It is so ordered.