MADDEN & CO. v. PHOENIX INS. CO.

1. Insurance—Waiver—Jury.—Where after loss, at request of insured, the agent of insurer comes to scene of loss, informs insured that he would have the matter adjusted, and insurer sends an adjuster, who refuses to assist in making up proofs of loss, according to promise of insurer, the proofs forwarded by insured having been held by it to be defective, and adjuster denies liability because policy was null and void, is some evidence of waiver of right to proofs of loss, as required by the policy, and must go to the jury.

2. Ibid.—Ibid.—Inventory—Iron Safe Clause.—Where the insured at time of making application showed to agent of insurer an inventory of the stock of goods and agent says, "it is all right," the insurer thereby waives its right to afterwards insist that such inventory does not conform to the iron safe clause.

3. Ibid.—Inventory—Iron Safe Clause—Jury.—The proof here is some evidence of a compliance with the requirements of the provisions of the iron safe clause as to keeping books of inventory, that they were kept in fire-proof safe, and that these books were produced for inspection of insurer, and this question should have been sent to jury.

4. Notice—Other Insurance—Jury.—That an agent of an insurance company issues a policy on a stock of goods, with notice that another company, of which he was then an agent, had in force a policy on same goods issued by his predecessor, his information will be imputed to latter company as notice of other insurance, and that it fails to cancel its policy, are circumstances tending to show waiver of right to insist on provision of policy prohibiting other insurance, and question is for jury.

5. Evidence—Mistake.—In a law case, it is competent to show that a date in a writing was a mistake, also in this case it is competent, under allegation in answer that plaintiff had made false statement as to a date, and to show that defendant had notice of true date.

6. IBID.—Under general denial defendant insurance company may prove that plaintiff did not own property in question, destroyed by fire, where the plaintiff alleges ownership in himself.

7. IBID.—INSURANCE.—Under general denial of allegation that fire did not happen through any negligence or fault of plaintiff, proof is competent tending to show that plaintiff burned his own property.

8. IBID.—Admission of immaterial evidence is not prejudicial.

9. IBID.—OPINION.—A witness who has had experience in merchandising, and has been a salesman and has inspected a stock of goods, may give his opinion as to the value of the stock.

Before TOWNSEND, J., Laurens, February term, 1904. Reversed.

Action by L. T. Madden & Co. against Phœnix Assurance Co. From judgment for defendant upon verdict directed, plaintiffs appealed.

*Messrs. Johnson & Nash* and *W. R. Richey,* for appellants, cite: *As to when Circuit Judge may direct a verdict:* Con., Art. V., sec. 26; 15 S. C., 92; 42 S. C., 28. *When defendant claims that policy is void, he waives right to require proofs of loss:* 29 S. C., 579; 36 S. C., 265; 37 S. C., 70; 51 S. C., 547. *Forfeitures are not favored in the law:* 96 U. S., 242; 28 Am. St. R., 554; 17 Am. St. R., 233; 55 S. C., 589. *When party will be held to be agent of insurance company:* Code, 1902, 1810; 57 S. C., 365; 18 L. R. A., 498; 57 S. C., 354; 36 S. C., 207; 18 L. R. A., 497. *Act of agent in accepting inventory is waiver of defect by company:* 36 S. C., 269; 46 S. C., 79; 54 S. C., 599; 51 L. R. A., 698. *Provision as to other insurance was waived:* 55 S. C., 593; 51 S. C., 181; 52 S. C., 224; 7 Ency., 1 ed., 1015, 1017, 1018; 90 Mich., 236; 16 Md., 266; 148 Mass., 61; 18 L. R. A., 498; 39 Am. R., 584; 5 Am. R., 115; 54 Ill., 164; 51 L. R. A., 698. *Mistake in writing may be shown at law:* 16 S. C., 627; 15 Ency., 1 ed., 673. *Evidence tending to show that plaintiff burned his own property not admissible, unless defendant plead that issue:* 28 S. C., 431; 17 S. C., 514; 43 S.

C., 26; 60 S. C., 485. *Witness must have knowledge enough to form an opinion before he can express one:* 7 Ency., 1 ed., 491.

*Messrs. Ferguson & Featherstone* and *King, Spalding & Little,* contra, cite: *Furnishing sufficient proofs of loss is a condition precedent to right to recover:* 40 Neb., 700; 86 Ala., 558; 53 N. Y. Supp., 524; 74 Ibid., 1062; 97 Ga., 634; 35 Md., 89; 41 Pa. St., 161; 110 Pa. St., 548. *Covenant as to keeping itemized inventory and books is valid:* 128 Ala., 451; 113 Ia., 555; 115 Ga., 454; 48 S. W., 559; 67 S. W., 153. *An agreement to dispense with this covenant cannot be made:* 113 Ia., 555; 90 Va., 290; 13 S. W., 1103; 65 Ark., 240; 98 Ga., 754. *Taking out other insurance avoids the policy: Young* v. *Ins. Co.,* 69 S. C.; 2 May on Ins., sec. 372. *Non-return of premium after loss is no waiver of this provision:* 55 S. C., 450.

November 30, 1904. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for the recovery of twelve hundred dollars on a policy of insurance, issued by the defendant to the plaintiffs, 1st September, 1901, on their stock of goods at Cross Hill, S. C., which was destroyed by fire on the 12th day of June, 1902. The defendant answered the complaint, denying the material allegations thereof and interposing the following defense:

"That the plaintiffs violated the terms and conditions set forth in the policy of insurance in the following particulars:

"1st. That they failed to keep and furnish the defendant, the inventories and books provided for in said policy, and to keep the same in an iron safe or other safe place, as therein provided.

"2d. That they took out other and further insurance on the stock of goods covered, and other property covered, by their contract with the defendant without defendant's con-

sent, thereby making the contract with defendant null and void.

"3d. And, further, that at the time defendant's policy was issued, the plaintiffs had other insurance on their stock of goods, of which fact they failed to notify defendant.

"4th. That the plaintiffs, in their application for insurance, made sundry false representations as to value of stock on hand when the inventory had been taken, other insurance thereon, and as to fires previously had by them, thereby rendering the policy issued to them by defendant null and void."

After all the testimony for both sides in this case had been taken, the defendant moved the Court to instruct the jury to write a verdict for the defendant on the following grounds:

"1st. Because, under the proof of this case, the undisputed proof has been a failure to furnish such proof of loss as the law required by the written contract of the insurance policy, which was before the Court.

"2d. There has been a total breach of what is known as the Iron Safe Clause before the Court.

"3d. There is in existence other insurance without notice within contemplation of the policy."

After argument, the Court ruled as follows: "I am satisfied the case is fatal on all three grounds, and I will have to instruct a verdict for the defendant"—which he did.

The plaintiffs appealed, assigning errors on the part of his Honor, the Circuit Judge, in directing a verdict, and on other grounds set forth in the exceptions.

We proceed to the consideration of those exceptions assigning error in directing a verdict on the first ground mentioned. There was testimony introduced to establish the following facts: Immediately after the fire, the plaintiff wrote to J. W. Spence, the agent of the defendant, giving him notice of the fire and requesting him to come to Cross Hill. The plaintiffs had policies of insurance

on their stock of goods in two companies. J. W. Spence came, and in the course of conversation said to P. H. Madden that he would have the whole matter adjusted; that he need not put himself to any trouble; that he would ask the agent of the other company to let one man adjust the loss under both policies. Spence told the plaintiffs to write to L. R. Warren, at Richmond, Va., who was the adjusting agent of the company. On the 11th of July, 1902, the plaintiffs wrote to the defendant as follows:

"Cross Hill, S. C., July 11, 1902.

"Phœnix Assurance Company—Gents: We send you statement what was lost on June 12th, 1902, on Policy No. 5625260. We had on September the 1, 1901, date of policy, amount of goods $2,629.47; bought since $1,800.49. We lost $2,380.85. This is correct. Yours truly, L. T. Madden & Co.

"P. S. How the fire started is not known."

The letter was sworn to before a notary public.

On the 6th of August, 1902, the plaintiffs wrote to L. R. Warren and likewise to the company, stating that they had not heard from the defendant, and requesting a reply. On the 14th of August, 1902, the plaintiffs wrote a letter to L. R. Warren, the adjusting agent, giving the same information in the same words as was contained in their letter of July 11th, 1902, and stating that the Piedmont Insurance Co. had a policy for $500 on the same property. Neither Warren nor the company replied until the 11th August, 1902. Warren wrote to the assured on the 27th of August, 1902, declining to receive the papers as proofs of loss and stating the defects therein as such. They expressly advised the plaintiffs that the company waived none of its rights. This letter was enclosed with one dated 28th of August, 1902, stating that Warren would request F. M. Butt, of Augusta, Ga., to visit Cross Hill and investigate the loss, and would suggest to him to show the plaintiffs how to fill up and execute the proofs of loss, if they so desired, but that this would be

done only to facilitate them, and without waiver of any of the company's rights; that the sole authority of F. M. Butt was to investigate and report, but that any proposition made through F. M. Butt would be considered. F. M. Butt went to Cross Hill, but refused to render the plaintiffs any assistance in the preparation of the proofs of loss, and said to them that the insurance policy was null and void from the date it was issued. There was other correspondence, which we do not deem it necessary to reproduce.

Let us see to what extent the acts and declarations of J. W. Spence and F. M. Butt, the company's agents, were binding upon it. Section 1810 of the Code of Laws is as follows:

"Sec. 1810. Any person who solicits insurance in behalf of any insurance company not organized under or incorporated by the laws of the State, or who takes or transmits other than for himself any application for insurance, or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine and inspect any risk, or receive, collect or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or the consummating of any contract of insurance for or with any such company other than for himself, or who shall examine into and adjust or aid in adjusting any loss for or in behalf of any such insurance company, whether any such acts shall be done at the instance or request or by the employment of such insurance company, shall be held to be acting as the agent of the company for which this act is done or the risk is taken."

This section was construed in the case of *Norris* v. *Ins. Co.,* 57 S. C., 358, 365, 35 S. E., 572. In that case the insurance company contended that Smith was not its agent, as far as the plaintiff was concerned. The Court said: "But

we are not prepared to take such subtle views of the matter of agency. These corporations act through agents. There is nothing in the policy issued by this insurance company which names any agent as such who can bind the company. This insurance company must remember that its contracts made within our State limits, under our statute are taken with section 1481 (now 1810), hereinbefore quoted as a part of such contracts, and that this section 1481 does not in its use of the word 'agent' place any limitations upon his powers so as to deprive any one who deals with such agent with respect to a contract of insurance made by such an one with the agent's insurance company as to the principle of the right to impute knowledge of such agent to the knowledge of the principal."

When a person does any of the acts enumerated in sec. 1810 of the Code of Laws, the presumption is that he was the agent of the insurance company, but such presumption is subject to rebuttal. This principle does not infringe upon the doctrine announced in *Young* v. *Ins. Co.*, 68 S. C., 387. Our conclusion is that the acts and declarations of the agents, J. W. Spence and F. M. Butt, were *prima facie* binding upon the defendant, and that they furnished evidence of waiver on the part of the defendant to insist upon its right to require compliance with the terms of the policy as to proofs of loss, especially when F. M. Butt refused to assist in the preparation of the proofs of loss, and declared that the policy was null and void from the time it was issued. These facts tended to show a denial of liability on the part of the defendant, and that it intended to rely upon the fact of forfeiture of the policy by the plaintiffs as a ground for refusing payment.

In the case of *Dial* v. *Life Association*, 29 S. C., 560, 579, 8 S. E., 27, the Court uses this language: "The case of *Knickerbocker Life Insurance Company* v. *Pendleton*, 112 U. S., 696, with the authorities therein cited, shows conclusively that a distinct refusal to pay and a denial of liability, upon the ground that the policy had lapsed and was forfeited, is a waiver of the condition precedent requiring proof of

death; and this doctrine seems to have been recognized in this State in *Charleston Insurance and Trust Company* ads. *Neve,* 2 McMull, 237; *Madsden* v. *Phoenix Fire Insurance Company,* 1 S. C., 24. When, therefore, the company was notified of the death of Dial, and the necessary blank forms to make out proof of death were applied for and refused upon the ground that the policy had been forfeited, this was a waiver of the required proof, or, at least, was sufficient evidence of such waiver as rendered it necessary to submit the question to the jury." This principle is applicable to fire as well as life insurance policies. *Pelzer Manfg. Co.* v. *Sun Fire Office,* 36 S. C., 213; 15 S. E., 562; *Stickley* v. *Ins. Co.,* 37 S. C., 56, 16 S. E., 280. It was error, therefore, not to submit the question of waiver to the jury.

We will next consider whether his Honor, the presiding Judge, erred in directing a verdict on the ground that there was a total breach of what is known as the Iron Safe Clause of the policy. That clause is as follows: "1st. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned. 2d. The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause and during the continuance of the policy. 3d. The assured will keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night and at all times when the building mentioned in this policy is not actually open for business, or failing in this, the assured will keep such books and inventories in some

place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such set of books and inventories for this inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon." The sections of this clause will be considered in their regular order.

*1st Section.* The testimony shows that the plaintiffs made an inventory of their stock of goods, which was completed on the 25th of August, 1901, and that they exhibited the inventory to the defendant's agent when they made application for policy of insurance; that the agent raised no objection to it, but, on the contrary, said it was "all right." The case of *Pelzer Manufacturing Co.* v. *Sun Fire Office* shows conclusively that the defendant waived the right to insist upon the objection that it did not conform to the requirements of the policy.

*2d Section.* The plaintiffs introduced in evidence the invoices of goods bought between 25th August, 1901, and 12th June, 1902, amounting to $1,800.46. They also offered in evidence their cash book, showing cash sales from 25th August, 1901, to 12th June, 1902, amounting to $1,910.96.

The following is a sample page of the cash book set out in the record: "Cash sales for September, 1901.—2d, $1.00; 3d, $1.00; 4th, $1.10; 5th, $1.80; 6th, $1.25; 7th, $1.50; 9th, $1.00; 10th, $1.25; 11th, $1.50; 12th, $1.30; 13th, $1.00; 14th, $1.50; 16th, $1.25; 17th, $1.00; 18th, $1.00; 19th, $1.25; 20th, $1.50; 21st, $1.25; 23d, $1.40; 24th, $1.10; 25th, $1.00; 26th, $1.15; 27th, $1.10. Total, $28.20." They also offered in evidence their credit sales book, showing credit sales up to 12th June, 1902, amounting to some $300 or $400, the amount of which was included in the cash sales. This afforded at least some evidence of a compliance with the requirements of the policy and presented a question for the jury to determine as to its force and effect.

If there is any evidence whatever tending to establish a fact, the Judge cannot determine its sufficiency, but it must be submitted to the jury.    In vol. 1, of Starkie on Evidence, it is said : "It has been frequently doubted whether a particular question be one of law or fact.    Thus far it is clear that whenever upon particular facts found, the Court, by the implication of any rules of law, can pronounce of their legal effect with reference to the allegations on the record, such inference is matter of law.    It is also clear that whenever the Court cannot pronounce on the legal effect of particular facts, and when it is requisite to enable them to do so, that the jury should find some other inferences or conclusions, such further inferences or conclusions are questions of fact."

In the case of *Glover* v. *Gasque,* 67 S. C., 18, 34, the Court, after quoting the language thus mentioned, proceeds as follows : "It is unquestionably the duty of the Court in construing a written instrument, to interpret *its language,* and it may also state the effect thereof, where it is suceptible of but one inference; but where the inference to be drawn from the facts stated in the instrument is in dispute, and such facts susceptible of more than one inference, then the question must be determined by the jury, especially when the inference to be drawn is dependent upon other facts in the case."    See, also, *Thompson* v. *Protective Union,* 66 S. C., 459.

The burden of proof rested upon the defendant to show that the policy was forfeited, and when the Circuit Judge decided that the testimony was sufficient to establish that fact, he invaded the province of the jury, it being susceptible of more than one inference.    *Roach* v. *Security Fund Co.,* 28 S. C., 431; *Kingman* v. *Ins. Co.,* 54 S. C., 599.

*3d Section.*    There was testimony to the effect that the books and inventory were kept in a fire proof safe.    There was also testimony that the books and inventory were produced for the inspection of the company.

The next question for consideration is whether there was error in directing a verdict on the ground that there was in evidence other insurance without notice, in contemplation of the policy. In the application of the policy of insurance in this case is the following question: "Is there now other insurance on said property? (If there is, state 1, how much; and 2, in what company or companies.") To which the plaintiffs answered: "Yes, $500 on stock expired February, 1902." The policy provides that "this entire policy unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." When the policy for $500 expired in February, 1902, it was not renewed.

In January, 1902, the plaintiffs wrote a postal card to S. E. Miller, who was the defendant's agent when the policy in suit was issued. As J. S. Spence had succeeded him as agent of the defendant, he wrote to the plaintiffs as follows, on the 30th of January, 1902:

"Your postal to Mr. S. E. Miller in regard to insurance received, and as he has sold his fire insurance business to me, he referred it to me. I shall be glad to take the matter up with you on the terms named to Mr. Miller, namely: payment of $20 now and balance in a short while. You will please send me to-morrow the old policy of Simpson & Miller, so that I can see the exact amount and circumstances in the matter. Trusting to hear from you at once and I will write the policy and send it to you at once."

The policy was issued in another company for $600, but was cancelled on the 12th of February, 1902, because that insurance company objected. J. W. Spence testified that he would have cancelled, also, the policy now in litigation, but was informed by the plaintiffs that they had bought their spring stock and expected likewise to have a carload of corn in a few days. To the question: "As a matter of fact, you

20—70.

were agent of this company, and let that $1,200 policy
stand?" he answered "Yes." The defendant introduced in
evidence a policy of insurance issued by the Piedmont Mu-
tual Insurance Co. for $500, on the 30th of April, 1902, to
L. T. Madden & Co., covering their stock of goods at Cross
Hill, and it was of force at the time their stock of goods was
burned.   J. W. Spence testified that he did not have know-
ledge of this policy.   It may be said that J. W. Spence per-
mitted other insurance on the property when he himself
insured the property in another company, although he knew
that the policy in dispute was then of force.

In 7 Enc. of Law (1st ed.), 1017, it is said: "But know-
ledge of other insurance on the part of a general agent, as a
local agent authorized to write policies for the company and
transact its business generally in his locality is treated as the
knowledge of his company; and it has been held that his
waiver of notice of other insurance, as by the receipt of
renewal premiums after he has knowledge of other insurance
on the premises, is binding on the company, although the
policy provides that no consideration can be waived except
in writing by the secretary, and 'that any person other than
the assured who may have procured this insurance to be
taken by this company shall be deemed to be the agent of the
assured named in this policy and not of this company, under
any circumstances whatever, or in any transaction relating
to this insurance.' "

When J. W. Spence, the agent of the defendant, insured
the plaintiffs and in another company, his knowledge that
there was other insurance is imputed to the defendant.
*Norris* v. *Ins. Co.*, *supra*.   And its failure to cancel the
policy and return the premium of insurance after such know-
ledge was a circumstance tending to show waiver of the
right to insist upon the provision of the policy prohibiting
other insurance.   The burden of proof rested upon the *de-
fendant* to show that the policy was forfeited, and when the
Circuit Judge decided that the evidence was sufficient to

establish that fact, he invaded the province of the jury, the testimony being susceptible of more than one inference.

The sixth exception is as follows: "VI. Because the Court erred in not allowing P. H. Madden to testify as to a mistake that was written in the application as to the date his inventory was taken, it not being an effort to vary the terms of the paper but to correct an error." The defendant in its answer alleged that the plaintiffs in their application for insurance made false statements as to when the inventory had been taken. The testimony was competent, not only for the purpose of showing good faith on the part of the plaintiffs, but likewise to establish the fact that the defendant had notice of the true facts before issuing the policy.

The Court is not confined to the exercise of its chancery powers in administering relief from mistakes. The doctrine is thus stated in *Moore* v. *Edwards,* 1 Bailey, 23 (approved in *Hodges* v. *Kohn,* 67 S. C., 69 to 72) : "Accidents and mistakes certainly constitute one branch of equity jurisdiction; but it is not peculiar except when a discovery is indispensible, or the nature of the relief such as to require the extraordinary aid of chancery. Actions at law to recover back money paid by mistake, constitute in all the books of practice a conspicuous class of causes for which the action of assumpsit may be maintained at law; and there is no question that in general, when the facts can be proved according to the rules of the common law, and the remedy is such as a court of law can administer, consistently with the prescribed modes of proceeding, mistakes may be inquired into in a court of law. In the case under consideration, the plaintiff sued out a *sci. fa.* to revive a judgment against the defendant, and as evidence of payment the defendant procures an execution on which is indorsed the word 'satisfied;' the plaintiff replies, it was so indorsed by *mistake.* There is nothing magical in the term itself. The evidence offered was admissible, according to the rules of the common law; the relief was

such as a court of common law was competent to give, and the Court, therefore, clearly had jurisdiction."

The seventh exception is as follows: "VII. Because the Court erred in holding that the defendant could attack ownership of the burned property when they had not specially denied it, it being submitted that the defendant must deny specially that plaintiffs did not own the goods before it can assail their ownership." The complaint alleges that at the time of making said insurance and until the fire, they were the owners of the property insured. The testimony was responsive to this allegation, and was, therefore, competent. *Latimer* v. *Cotton Mills*, 66 S. C., 135.

The eighth exception is as follows: "VIII. Because the Court erred in allowing testimony as to a scuttlehole in the store, and other matters tending to show, and for the purpose of showing, that Madden burned his own store, when the defendant had not plead any such defense." The complaint alleges that the fire did not happen by any negligence or by any fault of the plaintiffs. This exception is disposed of by what was said in considering the seventh exception.

The ninth exception is as follows: "IX. Because the Court erred in allowing the witness, E. B. Rasor, to answer the question: 'Might or not a man who is familiar with that class of goods form a pretty accurate idea?' it being suggested that this calls for a mere opinion about which the witness may have no right to have an opinion, especially to express it." This was an immaterial question and was in nowise prejudicial to the rights of the plaintiffs.

The tenth exception is as follows: "X. Because the Court erred in allowing the question by defendant's attorney to B. B. Goodman: 'Empty shoe boxes would not amount up very fast, would they?' It is suggested that this is a leading question, and presumed the fact that there were empty shoe

boxes." This exception is disposed of by what was said in considering the ninth exception.

The eleventh exception is as follows: "XI. Because the Court erred in holding and ruling that a witness may give his opinion about the value of a stock of goods, whether he knows anything about it or not." The testimony showed that the witness had experience in merchandising and had likewise sold goods as a salesman, and that he had inspected the stock of goods insured. Under these circumstances, the testimony was admissible. In 1 Elliott on Evidence, section 685, the rule is thus stated: "Witnesses who are not strictly experts as well as expert witnesses may testify as to the value of the property, real or personal, or as to the value of services in a proper case. They must, however, have some knowledge on which to base their opinion. If they have such knowledge, the fact that it is slight, will go to the weight of their testimony rather than to its competency; but if they are not acquainted with or have no knowledge of the matter in question, so that their opinion can in no way aid the jury, the Court should refuse to permit them to give an opinion, which would necessarily be a mere guess or conjecture." See, also, sections 671, 672, 675 and 686.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and that the case be remanded for a new trial.