6690

## COBB AND SEAL SHOE STORE v. AETNA INSURANCE CO.

1. INSURANCE.—A CONTRACT is good between the parties, no matter how incorrect the names used in the paper be, if it appears they were intended as the names of the parties to be bound by the contract or to receive its benefits. There is evidence here sufficient to carry the case to the jury, tending to show a policy of insurance issued to Cobb and Seal was intended to insure a stock of goods owned by the corporation Cobb and Seal Shoe Store, which usually traded under the name of Cobb and Seal.

2. IBID.—INVENTORY.—The aggregate of copy invoices of a stock of goods less the sales is not equivalent to an inventory of the stock of goods at the time of the fire. Copy invoices of a stock of goods opened up twenty days before insurance and five months before the fire should be submitted to the jury on the issue whether they were substantially an inventory made within twelve months before the issuance of the policy.

3. IBID.—IRON SAFE CLAUSE—WAIVER.—Failure to keep books of account by a mercantile company in an iron-proof safe or to remove them when not in use to a place in which they would not be destroyed by a fire from the store building, forfeits the policy under the iron safe clause, unless there is waiver on part of insurer. No acts by insurer after execution of the nonwaiver agreement in this case can be construed into waiver of this forfeiture, but here it is held there are acts by insurer after the fire and before execution of nonwaiver agreement from which such waiver may be inferred, and which acts are not covered by the agreement. That the local agent of insurer knew the insured had no iron safe, and from time to time casually saw its employees leave the building without taking with them the account books, is no evidence of waiver of this forfeiture.

MR. JUSTICE JONES *dissents on this latter point.*

MR. JUSTICE GARY *dissents.*

Before PURDY, J., Abbeville, March, 1907. Affirmed.

Action by Cobb & Seal Shoe Store against Ætna Insurance Co. From judgment for plaintiff, defendant appeals.·

*Messrs. King, Spalding & Little* and *M. P. DeBruhl,* for appellant, cite: *The corporation cannot maintain a suit on*

*this policy:* Cook on Corp., 709; 13 Mass., 406; 140 U. S., 304; 94 Ga., 104, 289. *Breach of iron safe clause avoids the policy:* 151 U. S., 452; 1 May on Ins., sec. 156; 98 Ga., 754; 128 Ala., 451; 56 S. E., 506; 60 S. W., 661; 90 Va., 290. *Invoices do not constitute an inventory:* 56 S. E., 505; 111 Ga., 622; 61 S. W., 962; 121 Ga., 228; 80 S. W., 283; 77 S. W., 434. *There was no waiver shown in this case:* 83 Pac., 611; 80 Ala., 528; 86 Ala., 431; 53 Tex., 61; 56 Vt., 374; 54 S. C., 371.

*Mr. Wm. P. Greene,* contra, cites : *Error in the name does not effect the contract:* 68 S. C., 365; 76 S. C., 76; Ost. on Ins., 271; 7 Mo. App., 77; 45 N. Y., 454; 65 N. Y., 6; 18 Ill. App., 576. *The invoices should go to jury on issue of inventory:* 70 S. C., 303; 180 U. S., 134; 52 S. E., 254. *Defendant waived its right to insist on forfeiture:* 57 S. C., 370; 76 S. C., 82; 16 Ency., 940; 52 S. C., 231; 70 S. C., 78; 54 S. C., 603; 46 Am. St. R., 797; 7 Id., 495; 19 Id., 723; 65 Id., 717; 28 Id., 535; 16 Ency., 937, 941; Ost. on Ins., 550; 46 S. C., 79; 19 Cyc., 954.

October 18, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiff recovered judgment on defendant's policy of fire insurance covering a stock of shoes in a store at Edgefield, S. C. Motions made by the defendant for direction of a verdict and for a new trial were refused, and the main points involved in the appeal relate to the grounds on which these motions were based.

The plaintiff was duly incorporated under the name of Cobb & Seal Shoe Store, but did business under the name of Cobb & Seal, and the policy was issued in the name of Cobb & Seals instead of the proper corporate name.

The defendant asked the Court to hold, as a matter of law, the corporation Cobb & Seal Shoe Store could not recover on a policy of insurance issued in the name of Cobb & Seals. O. H. Cobb testified to informing

Norris, the insurance agent, of the incorporation and of the true corporate name when he was negotiating for the insurance, and before the policy was issued. If the real meaning of the contract was to insure the corporate property for the benefit of the corporation, designating the corporation as Cobb & Seals, instead of using its true corporate name, cannot have any effect to relieve the insurance from liability. A contract is good between the parties, no matter how incorrect the names used in the paper may be, if it appears they were intended as the names of the parties to be bound by the contract or to receive its benefits. *Neely* v. *Yorkville*, 10 S. C., 147; 1 Thompson on Corporations, sec. 294.

Evidence that there was no such legal entity as Cobb & Seals, and that the defendant's agent before issuing the policy knew the property was owned by the corporation Cobb & Seal Shoe Store, tended strongly to show the failure to use the true corporate name in the policy was a mere inadvertence, and that "Cobb & Seals" in the contract meant the corporation. It follows there was no such failure to show a contract with the plaintiff corporation as to require the Court to direct a verdict for the defendant or order a new trial.

The policy requires: "1st. The insured will take a complete itemized inventory of the stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken, in detail, within thirty days of the issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned."

The plaintiff, having just opened the Edgefield store, had not taken stock and had no inventory when the contract of insurance was made, unless the invoices of the goods purchased are to be so regarded. The invoices and all the books relating to the Edgefield business were burned in the

store, but there was evidence that the plaintiff kept in a safe in its Abbeville store duplicate invoices of all goods sent to the Edgefield store.   As an inventory at the time the business opened, which was less than twelve months before the date of the policy, the plaintiff offered a set of these invoices showing all goods which had been received at the opening. A merchant's invoices are written itemized accounts, sent to him by the seller of the goods purchased, and the prices charged.   His inventory of goods is his stock-taking, written out in detail.   It consists of a detailed descriptive list of all the articles in the store, with a *bona fide* estimate of the market value of each article.   Obviously, it is not true, as a general proposition, that a collection of all the invoices, less the aggregate sales, is the equivalent of an inventory. After goods have reached the store-house, they may be stolen, or prove to be worth less than the invoice price, because unsalable or shop-worn.

The difference between the invoice price and the inventorial value increases with the duration of the business. Therefore, when applied to a mercantile business which has continued long enough for the difference between the sum of the invoices, less the sales, and the inventory to be material, we give full assent to the following cases holding the inventory required by this provision of a policy cannot be supplied by the invoices.   *So. Ins. Co.* v. *Knight* (Ga.), 36 S. E., 821; *Fire Assoc.* v. *Masterson* (Tex.), 61 S. W., 962; *Home Ins. Co.* v. *Delta Bank* (Miss.), 15 So., 932. This business had continued for about five months, a period long enough for material loss and depreciation, when the fire occurred, and, therefore, we think the plaintiff's position, that the sum of all the invoices, less the sales, was equivalent to an inventory made at the time of the fire, is untenable.

But at the beginning of the business, a formal inventory or taking of stock would show practically the same articles in the store-house as the invoices preserved by the merchant as a record of the goods in his store at the opening.   As

the valuations in the inventory rest on the merchant's own estimate, the inventory taken at the beginning would show stock of estimated value greater than the sum of the invoices; for it is fair to assume the business would not be undertaken unless the merchant supposed the goods to be worth more in his store-house than the invoice prices.

Therefore, with perfect fairness to the insurer, at the opening of the business invoices of the goods received might be regarded the same as a formal inventory; that is the merchant's descriptive list of all articles in the store, with his estimate of the value of each.

In this case, the policy was issued about twenty days after the business opened, and O. H. Cobb, the head of the plaintiff corporation, produced a separate set of invoices, which he testified was a complete list of the goods on hand when the business was opened and which he kept in the store at Abbeville. These invoices may fairly be taken as an inventory made within twelve months prior to the date of the policy. Such an inventory, like any other, is, of course, subject to attack for lack of verity. We are of the opinion the Circuit Judge was right in refusing to direct a verdict against the plaintiff for failing to comply with the requirement of the policy as to the inventory. The plaintiff, at the least, was entitled to have the jury decide whether the invoices of the goods on hand when the store was opened was in substance an inventory. *Madden* v. *Ins. Co.,* 70 S. C., 302, 49 S. E., 855. This conclusion was in accord with the decision of the Court of West Virginia, in *Ruffner* v. *Ins. Co.,* 53 S. E., 944. In *Carp* v. *Nat'l Assurance Assoc.* (Mo.), 99 S. W., 523, plaintiff's file of invoices was held equivalent to a book showing all goods purchased.

The iron safe clause further provides: "2d. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continu-

ance of this policy.    3d.  The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night. and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

Having held that, under the evidence, the jury might consider the invoices kept in the store at Abbeville, a place not exposed to the fire, to be in substance an inventory, it follows there was no error in refusing to direct a verdict for defendant for failure to keep the inventory in an iron safe in the store-house mentioned in the policy, or in some place not exposed to a fire which would destroy that building. But, as shown by plaintiff's own evidence, the books presenting a record of the business were not kept in an iron safe in the store, nor in a place free from exposure to the fire, as required by the policy, but, on the contrary, were habitually kept in the store without protection from fire, and were burned with the store and goods.  The plaintiff, being unable to produce such books for the inspection of the insurance company, failed to comply with the policy.  The defendant insists for such failure the policy was rendered void.  This result must follow unless prevented by estoppel or waiver.

Was there evidence of waiver or estoppel to support a verdict for the plaintiff?  Norris, the agent, who issued the policy, admitted knowledge that the plaintiff had no iron safe in the store.  He does not say with definiteness when he acquired the knowledge, but, taking his testimony as a whole, in connection with the evidence on behalf of plaintiff, there was room to infer he knew this fact at the time he

delivered the insurance policy. Knowledge by the agent at the inception of the insurance contract, that the books could not be kept in an iron safe on the premises, would estop the insurance company from claiming a forfeiture on that ground. The cases in this State announcing the principle are cited in *Pearlstine* v. *Ins. Co.*, 74 S. C., 250; *Doyle* v. *Hill*, 75 S. C., 261; *Fludd* v. *Ins. Co.*, 75 S. C., 315.

But the contract itself provides the precautions to be taken when the insured for any cause fails to keep the books in an iron safe. In that case the agreement is to keep them in some place not exposed to a fire which would destroy the store-house. We do not think any evidence was adduced of waiver or estoppel before the fire as to this agreement. Assuming that Norris, the agent, knew at the time the policy was issued the plaintiff's books were kept in the store, this would be no notice that the plaintiff would continue to keep them there after making a most important contract, depending for its validity on keeping them elsewhere. But it is insisted the agent had an office near by, was frequently in and about plaintiff's place of business, and had abundant opportunity to observe that the books were not carried from the store at night. There is no pretense of actual knowledge brought home to Norris, either as defendant's agent or as an individual, of the plaintiff's habit of leaving the books in the store, unprotected from fire. The claim is that it was his duty, on behalf of the insurance company, to think of the books when he saw the plaintiff's employees leave the store, and to protest against the failure to take them out.

Slight circumstances have been allowed by the courts to support verdicts as some evidence of waiver or estoppel, but to sustain this contention would be going beyond reason.

Whether Norris was an agent whose power embraced the authority to waive any or all of the conditions of the policy it is not necessary to decide, for, even if he had such authority, neither the company nor its agent was under any obligation to the plaintiff to watch its officers and employees

for violations of the policy and warn them against continuing such violations. The plaintiff's duty was to have the conditions of the contract in mind and observe them, and he cannot shift the duty to the shoulders of the defendant's agent. Night after night, for five months, the plaintiff left its books in the store unprotected, because its officers did not bear in mind the conditions of the policy, or, having them in mind, chose not to comply with them. It cannot escape the consequences by saying ·the defendant's agent should have had the matter on his mind and seen to the removal of the books.

Further, when Norris had the opportunity to observe the failure to take the books out of the store, there is no evidence that he was engaged in or about the defendant's business with the plaintiff or any one else. At the most, he merely saw some of those in charge of plaintiff's store, from time to time, enter and leave the store, as any other citizen of the town might have seen them. There is no evidence that he ever thought of the insurance contract in connection with their coming and going; on the contrary, he testified he never thought of the subject at all.

This statement of the law, as taken from 19 Cyc., 810, is in accord with the cases in this State on the general powers of an agent, and is supported by numerous authorities cited in the text: "Any knowledge of the agent to be considered in law that of the insurer must have been acquired in the course of his business, and the company is not chargeable with information acquired by an agent in transactions without the agency, unless it appears that such information was remembered and in the mind of the agent during the time of the transaction upon which the insured claims waiver." *Knobelock* v. *Bank*, 50 S. C., 290, 27 S. E., 962. There was no evidence whatever of waiver or estoppel before the fire, and, therefore, it was error to submit to the jury the question whether the company had waived, before the fire, the requirement of the policy, that the books should be kept in an iron safe and produced after the fire.

The actions of the defendant and its agents after the fire are to be considered in the light of a non-waiver agreement. According to the testimony of E. E. Cobb, the general manager of the store, Norris, in the presence of the adjuster, wrote a paper to the effect that plaintiff had goods in the store of value far in excess of the insurance, and asked Cobb to go with him to get the best men in Edgefield to sign it. The same witness also testified Norris told him, while procuring signatures to this paper, he would have no trouble whatever in getting the insurance. Norris testified he expressed only the hope that the policy would be paid. The mere expression of hope or confidence by the agent after the fire, that the insurance would be paid, is no evidence of waiver. *Young* v. *Ins. Co.,* 68 S. C., 391, 47 S. E., 681; *Joye* v. *Ins. Co.,* 54 S. C., 374, 32 S. E., 442. But trouble taken by Cobb, plaintiff's manager, at the instance of Norris, defendant's local agent, with the acquiescence of its adjuster, in procuring signatures to the statement of the value of stock, with reasonable belief that the defendant regarded the policy as valid, under the cases of *Kingman* v. *Ins. Co.,* 54 S. C., 599, 32 S. E., 762, and *Montgomery* v. *Ins. Co.,* 55 S. C., 6, 32 S. E., 723, would ordinarily be some evidence of waiver. So, also, as a general rule, waiver could be inferred from the testimony that the adjuster demanded proof of loss and the production of the invoices heretofore mentioned. *Curnow* v. *Ins. Co.,* 46 S. C., 79, 24 S. E., 74; *Norris* v. *Ins. Co.,* 57 S. C., 358, 35 S. E., 572. But the plaintiff after the fire made a non-waiver agreement in these words: "It is hereby mutually understood and agreed by and between Cobb & Seal, of the first part, and the Ætna Insurance Company, Hartford, Conn., and other companies signing this agreement, parties of the second part, that any action taken by said party of the second part in investigating the cause of fire. or investigating and ascertaining the amount of loss and damage to the property of the parties of the first part, alleged to have occurred on Thursday night, June 7, 1906, shall not

waive or invalidate any of the conditions of the policy of
the parties of the second part, held by the parties of the first
part, and shall not waive or invalidate any rights whatever
of either of the parties to this agreement.    The intent of
the agreement is to preserve the rights of all parties hereto,
and provide for an investigation of the fire and the determi-
nation of the amount of loss or damage, in order that the
party of the first part may not be delayed unnecessarily in
. . . . . business, and in order that the amount of . . . . . loss
and damage may be ascertained and determined without
regard to the liability of the parties of the second part."
This language is too plain to require a restatement of its
meaning.    The plaintiff's contention that a request or
demand made by defendant of plaintiff is not an act of the
defendant within the meaning of the agreement is an
attempt at refinement wholly inadmissible.    The request for
the estimate of other persons of the value of the insured
property, demand for proof of loss, and the examination of
the invoices, were all acts looking to the ascertainment of
the amount of the loss, and, therefore, of the nature
expressly covered by the agreement.

The non-waiver agreement should be given full effect as
the contract of the parties.  *Joye* v. *Ins. Co.,* 54 S. C.,
375, 32 S. E., 446; *Hayes* v. *Ins. Co.* (N. C.), 44 S. E.,
404; *Shawnee Fire Ins. Co.* v. *Knerr,* 83 Pac., 611; *Sun
Ins. Co.* v. *Dudley* (Ark.), 45 S. W., 539; *Keet-Rountree
Co.* v. *Mercantile Ins. Co.* (Mo.), 74 S. W., 469.  But it
is to be strictly construed against the insurer, and should
not be extended by implication.    The agreement here intro-
duced does not in terms embrace any acts indicating waiver
done by the insurer prior to its execution, and the Court
will not extend it by construction to such acts, for that
would be holding the forfeiture to be revived by implica-
tion.    Forfeitures are not favored; and when once waived,
the waiver is irrevocable except by consent of the party
against whom it is claimed, and his consent will not be
implied from an agreement against waiver which does not

distinctly refer to past transactions, but appears on its face to contemplate future action. There was evidence of some acts done after the fire and before execution of the non-waiver agreement from which the jury might infer waiver. There was, therefore, no error in refusing to direct a verdict or order a new trial on the ground that there was no evidence of waiver of the forfeiture. There should be a new trial, however, for error in the charge heretofore pointed out.

MR. CHIEF JUSTICE POPE *concurs.*

MR. JUSTICE JONES *dissents because there was some evidence tending to show waiver.* See *McMillan* v. *Ins. Co., post,* 433.

MR. JUSTICE GARY *dissents.*