## STATE v. WALLACE.

1. EVIDENCE—CROSS-EXAMINATION.—Defendant being on trial for stealing a buggy from one B., which was found in the possession of G. and his mother, and G. having testified as a witness that the stolen buggy was claimed by defendant, G. may be asked, on cross-examination, if he and his mother did not have in their possession another buggy which had been stolen from B.
2. AN EXCEPTION which raises a purely abstract question as to which no specific ruling was made, not considered.
3. CROSS-EXAMINATION—CREDIT—CASE CRITICISED.—A witness may be discredited by cross-examination, and, therefore, the trial judge erred in ruling that the only way to discredit a witness is to put witnesses on the stand to prove that he is not worthy of belief. Distinction between character and credit is pointed out in Chapman *v.* Cooley, 12 Rich., 654.
4. CHARGING JURIES—FACTS.—The charge in this case did not release the jury from their obligation to find a verdict according to the law and the evidence, nor did it express the judge's opinion as to defendant's guilt.
5. IBID.—CHARACTER.—Where the case does not show that there was any testimony as to good character, the charge as to the weight to be given to good character is not subject to exception.

Before ALDRICH, J., Spartanburg, January, 1895.

Appeal by John Wallace from a conviction for larceny. That portion of the charge upon which the 4th and 5th exceptions are based, was in full as follows:

In regard to this man's character, why that is very often put

in testimony, and in doubtful cases it is entitled to the weight that a jury sees fit to give it. But, gentlemen, after all, it is better, with the definitions of law that I have given you, to leave it to the jury. This man is charged with stealing that buggy and harness and robe. You know what stealing is. You know these witnesses, you are better judges of their character, and what you want to do is to get at the truth. If the witnesses impress you with the idea that that man stole that property, say so by a verdict of guilty. If, however, their testimony has failed to satisfy your minds beyond a reasonable doubt that the prisoner is guilty—and he is entitled to the benefit of any reasonable doubt—then say not guilty. These rules of law and rules of evidence and forms are all intended for but one purpose, and that is to reach the justice of the case, and I know no better way to do it than to have twelve men—practical, business men—actuated by an honest effort to do justice between the State and persons who have violated its law, leave it to their consciences and their good sense. If he is guilty, say so; if he is not guilty, say so.

*Messrs. Nicholls & Jones*, for appellant.

*Mr. O. L. Schumpert*, solicitor, contra.

July 8, 1895. The opinion of the court was delivered by

Mr. Justice Gary. The defendant was indicted of grand larceny at the January, 1895, term of the Court of General Sessions for Spartanburg County. The stolen property consisted of a buggy, harness, and laprobe, the property of R. D. Blowers, which was alleged to have been stolen in September, 1893. In November, 1894, the stolen property was found in the possession of one Hasting Gist, the brother-in-law of Wallace. Gist said at first that it belonged to his mother, Lizzie Gist, afterwards he said it belonged to John Wallace. Lizzie Gist at first claimed the property, but afterwards said it belonged to Wallace. In his examination, Hasting Gist said that his mother had another buggy. On cross-examination defendant's counsel asked: * * * "Q. Where did your mother get that second buggy you say she had? A. She got it from Chris Gossett. Q.

Isn't that the buggy that Mr. Blowers arrested Chris Gossett about, or compromised with him? A. Do which? Q. Isn't that the buggy that Mr. Blowers arrested Chris Gossett for? *The Solicitor:* That is incompetent. *Mr. Nicholls:* We wish to show that this man, Chris Gossett, was in Mr. Blowers' employment, and in the business of stealing buggies. *The Solicitor:* With John Wallace; we will admit that. *By the Court:* You may examine him about this particular buggy Wallace is charged with stealing now, not some other buggy. If you can make him *particeps criminis—* *Mr. Nicholls:* This is the man that was found with the stolen goods, and he is trying to shift it off on somebody else. That is our view of it, and we think we can make him admit himself, probably, that they got another buggy from Mr. Blowers through this same person. *The Solicitor:* Grant that he did; grant that he got another buggy, and another, and another, that has nothing to do with the case. We are trying him for stealing a particular buggy. *Mr. Nicholls:* I think it would tend to discredit this witness, to show that he had been buying buggies at another time. *By the Court:* If that is your purpose, the proper way is to put witnesses on the stand to prove that he is not worthy of belief. *Mr. Nicholls:* Does your honor rule that we cannot ask him any question, while he would not be bound to answer, the answer to which would tend to discredit him? *By the Court:* If a question is asked which is irrelevant and objected to, of course, I will have to hold that it is irrelevant, because, even if he were to refuse to answer an irrelevant question, or answer an irrelevant question falsely, you could not predicate a charge of perjury upon it. A conviction of perjury would have to be upon some question material to the case. If it is immaterial, you could not convict him. *Mr. Nicholls:* I would like to ask him if he did not get this second buggy. *By the Court:* You may ask him. I suppose the solicitor will object. Didn't you get this last buggy from Chris Gossett? *The Solicitor:* I object. *By the Court:* I cannot see, so far, the relevancy of that second buggy transaction, as the defendant, Wallace, is not charged with stealing it. Subject to letting it come in, if I can be shown the relevancy hereafter, I must sustain the solicitor's objection."

Appellant's first exception is as follows: "1. That his honor erred in refusing to allow defendant to show that Hasting Gist and his mother, in whose possession the stolen buggy was found, had bought another stolen buggy from Chris Gossett, who had the custody of Mr. Blower's buggy." The stolen property was found in the possession of Hasting Gist. The theory of the defence was that Hasting Gist and his mother were *particeps criminis* with Chris Gossett, and that he had stolen the property from Mr. Blower. The object of the defence in cross-examining Hasting Gist was to show, by circumstantial evidence, that the possession of the stolen property by Hasting Gist was directly connected with the larceny. If the testimony had shown that Hasting Gist and his mother had been in unlawful possession of the other buggies delivered to them by Chris Gossett which he had stolen from Mr. Blower, it would have tended to throw light upon and explain the possession of the property alleged to have been stolen by the defendant. Testimony as to their guilt would have tended to exculpate him. The Circuit Judge was, therefore, in error, and this exception is sustained.

The second exception is as follows: "II. That his honor erred in ruling and holding that the defendant's counsel could not ask the State's witness, Hasting Gist, questions the answer of which might tend to discredit him." The following appears in the "Case:" "*Mr. Nicholls:* Does your honor rule that we cannot ask him any question, while he would not be bound to answer, the answer to which would tend to discredit him? *By the Court:* If a question is asked which is irrelevant and objected to, of course, I will have to hold that it is irrelevant, because even if he were to refuse to answer an irrelevant question, or answer an irrelevant question falsely, you could not predicate a charge of perjury upon it. A conviction of perjury would have to be upon some question material to the case. If it is immaterial, you could not convict him." The exception does not complain of error on the part of the presiding judge in refusing to permit the witness to answer a specific question. The question asked to discredit the witness might have been wholly inadmissible, and there would have

been no error on the part of the Circuit Judge in refusing to allow the witness to answer it. The exception only raises an abstract legal question. Furthermore, the presiding judge did not make a direct ruling upon this question. This exception is overruled.

The third exception is as follows: "III. That his honor erred in ruling and holding that the only way to discredit a witness for the State was to put witnesses on the stand to prove that he is not worthy of belief." In this there was error.

One of the most effective modes of *discrediting* a witness is by cross-examination. The distinction between the *character* and the *credit* of a witness is pointed out in the case of *Chapman* v. *Cooley*, 12 Rich., 654. This exception is sustained.

The fourth and fifth exceptions are as follows: "IV. That his honor erred in virtually charging the jury that they might disregard the rules of law and evidence, and 'if the witnesses impress you with the idea that that man stole that property, say so by a verdict of guilty.' V. That his honor erred in assuming and indicating to the jury that defendant was not only charged with a crime against the State, but was one of those persons who have violated its laws." These portions of his honor's charge, when considered in connection with the whole charge, show that the exceptions cannot be sustained.

The sixth exception is as follows: "VI. In charging the jury in substance that good character could only have weight in doubtful cases, and then only such weight as a jury saw fit to give it." It nowhere appears in the "Case" that any testimony was introduced as to good character. There is, therefore, nothing upon which to predicate this exception, and it is overruled.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and a new trial granted.