### STATE v. STUKES.

1. EVIDENCE.—A witness may state that a certain person was in a room at a certain time, if he states he heard him walking in there, heard him call from there, and he was the only person in the house.

2. IBID.—IMPEACHING WITNESS.—A witness may be asked on re-direct examination as to his being with appellant in jail and talking frequently with him, without an effort to impeach him.

3. IBID.—VERACITY.—ON CROSS-EXAMINATION in homicide case, it is not error to ask defendant as to his relations with a woman—his failure to keep an agreement not to visit her having something to do with the homicide. It was also competent here to test his veracity, as was also what he had said to a newspaper reporter.

4. IBID.—IBID.—It does not affect the right to test the veracity of a witness by cross-examination as to an affidavit previously made, that the affidavit was made to persons in sympathy with the other side.

5. IBID.—In homicide case, defendant being charged with killing deceased because he had decided to come off his bail bond and surrender him to the officers, evidence that deceased had acted improperly towards another man's wife, is incompetent, although communcated to defendant before homicide, defendant and his wife living near deceased, and his wife cooking for deceased.

6. MURDER—MANSLAUGHTER.—Trial Judge in defining murder and manslaughter is not limited to the definitions given in the statutes, but may use those given in the common law.

Before PURDY, J., Sumter, July, 1905. Affirmed.

Indictment against Colclough Stukes for murder of D. E. Wells. From sentence on verdict of guilty, defendant appeals.

*Mr. J. J. Cantey,* for appellant, cites: *A husband may slay a man to prevent a felony on his wife:* 30 Miss., 619; 58 S. C., 47. *Witness cannot be impeached by evidence of bad character:* 20 S. W., 549. *The true test of compulsion in making confession:* 55 Ga., 136; 108 Mass., 285; 2 C. & D., 347; 5 C. & P., 539. *Declarations of one accused of crime should be excluded:* 31 Fed. R., 501; 41 N. Y., 7. *As to proof of character:* 17 Conn., 467; 26 N. Y., 203. *As to proof of warnings:* 12 Rich., 430. *Evidence as to defendant being in home of deceased after homicide is hearsay:* 110 U. S., 581; 7 Cranch, 295. *What res gestae embraces:* 18 Fed., R., 156; 148 Pa., 566. *Declarations of Court during progress of case as to law by which jury is influenced is an instruction:* Hilliard New Trials, 255; 9 Conn., 107.

*Solicitor John S. Wilson* and *Mr. R. D. Lee,* contra. *Mr. Lee* cites: *State may show relation of witness called by it to defendant:* 7 S. C., 283. *Witness may be discredited by showing immoral relation with a woman:* 65 S. C., 247; 33 S. C., 39. *Evidence as to motive is proper:* 49 S. C., 285. *Relevancy of evidence is in discretion of Judge:* 73 S. C., 60; 49 S. C., 285; 60 S. C., 67; 52 S. C., 371. *Apprehension of immoral designs is not justification for homicide:* 12 Rich., 430; 29 S. C., 34. *Statute definition of murder does not abrogate common law:* 8 S. C., 237.

March 1, 1906. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The defendant was tried and convicted of the crime of murder at the July term, 1905, of the Court of General Sessions of Sumter County. After he was sentenced, he appealed to this Court upon seven grounds. From the record it appears that the appellant stabbed, to death, Capt. D. E. Wells, by the use of a knife upon his neck, throat and back, inflicting eight wounds from which he instantly died. The history of the crime was about as follows: While the defendant was confined in jail at Sumter, S. C.,

for some misdemeanor, unable to give bail bond, Capt. D. E. Wells, a planter of some wealth, was induced to become his security upon an agreement that said defendant, being a married man, would quit running around after other women and stay at home and attend to his work. The defendant, thereafter, moved his family to the premises of Capt. Wells and lived upon his place. It seems that the defendant was upbraided by Capt. Wells on several occasions for his neglect of duty under his aforesaid promises, namely: his failure to work faithfully and stop running after other women. On the 12th day of May, 1905, at noon, when the field hands came to the dwelling house of Capt. Wells and after finishing his dinner, which had been prepared by the family of the defendant, Capt. Wells was sitting in his chair smoking his pipe, and in effect remarked to the defendant that he had failed to keep his word as to his work and as to his conduct, and, therefore, he intended to surrender him to the magistrate to be put back in jail. That he called another farm hand to go to the magistrate for him in order to make the surrender. That thereupon the deceased, Capt. Wells, arose from his seat and stepped a few paces to place his pipe on the top of a cupboard standing in the passage, hereupon the defendant struck the deceased and stabbed him with a knife, which stab alone nearly severed his head from his body, and after the deceased had fallen headlong upon his face upon the floor, the prisoner jumped upon his prostrate body and stabbed him repeatedly. All this happened while the deceased was unarmed. The prisoner said while he was stabbing Capt. Wells a number of times, "You going to send for the magistrate, is you?"

The following are the seven grounds of appeal:

"1. It is respectfully submitted, that his Honor erred in allowing the witness, Frazier Gibbes, over the objection of defendant's counsel, to testify that he 'heard him (the defendant) open the private room door and walk in there,' and 'there was not anybody in there but Colclough' (the defend-

ant), on the ground that said testimony was purely hearsay and not part of the *res gestae.*

"2. It is respectfully submitted, that his Honor erred in allowing, over the objection of defendant's counsel, witness to answer or counsel of the State to interrogate John Moulton, a witness for the State, with regard to 'where did you come from when you came into this Court this morning,' and 'has not seen Stukes in jail for some months,' on the ground that the evident intention of counsel for the State was to impeach the witness for the State.

"3. It is respectfully submitted, that his Honor erred in allowing, over the objection of defendant's counsel, witness to answer or counsel for the State to interrogate Colclough Stukes (the defendant) upon the subject of his relations with one Beulah Johnson, as set out in the testimony, on the ground that said evidence was entirely irrelevant. 'The issue being (in the words of counsel for the State) whether Stukes killed the deceased with malice aforethought.'

"4. It is respectfully submitted, that his Honor erred in allowing, over the objection of defendant's counsel, witness to answer or counsel for the State to interrogate Colclough Stukes (the defendant) with regard to an alleged interview the defendant had with a reporter of the Sumter *Daily Item,* as set out in the testimony, on the ground that said interview was not made under oath, and cross-examination, and was, therefore, not the best evidence, and on the ground that said interview did not contradict defendant's testimony on the trial, but was, in consideration of the use made of same by counsel for the State, as evidence independent on the merits of the case.

"5. It is respectfully submitted, that his Honor erred in allowing, over the objection of defendant's counsel, witnesses to answer or counsel for the State to interrogate Maria Stukes (defendant's wife) with regard to an affidavit, which purported to impeach the oral testimony of witness at the trial, and given to John F. Ingram and Mr. Wells and Mr. W. G. Wells, on the ground that John F. Ingram and Mr.

Wells and Mr. W. G. Wells were interested witnesses, and on the further ground that said affidavit was not the best of evidence.

"6. It is respectfully submitted, that his Honor erred in denying counsel for defendant to interrogate or introduce in evidence the testimony of Cain Burriss, a witness for the defendant, who testified that he lived and worked with deceased, and who left the employ of deceased because deceased took away and interfered with wife of witness, on the ground that the aforesaid experience of witness was known to defendant and was, therefore, a warning to defendant, and was competent in view that such was calculated to influence the conduct of the defendant and make him apprehensive.

"7. It is respectfully submitted, that his Honor erred in charging the jury the definition of murder and manslaughter as existed at common law in this State, and should have confined himself to charging the same in the words of the statute, which abrogated the rules of common law in the State, and thereby misled the jury to the prejudice of the defendant."

We will now examine the grounds of appeal.

The witness, Frazier Gibbes, testified that the only person left in the house when Capt. Wells was killed was Colclough Stukes. That he, the witness, had changed his own position immediately after the appellant had killed Capt. Wells, so that he could not see into the house, but that he heard Stukes call his wife in a loud tone three times, and then turning, Stukes walked through the hall and turned the bolt of the lock on the door of Capt. Wells' bedroom. The defendant objected to this testimony because the witness did not see said Stukes, but only heard him. The witness gave as his reasons for so stating that it was Stukes, who entered the bed-room of Capt. Wells, that he heard Stukes call his wife, and from where he was when he called his wife, he heard him walk to said bed-room, and that he, Stukes, was the only person in the house at that time. It is

true, the witness Gibbes did not see Stukes enter the bed-room, but he gave good reasons for his statement, which was made in the presence of the jury. The statement was made after Stukes had killed Capt. Wells, and that he had killed Capt. Wells, was abundantly proved by eye-witnesses and was admitted by the appellant himself. We see no objection to this declaration or the statement by this witness. No use was made of the same to the injury of the appellant. This exception is, therefore, overruled.

2. John Moulton had been called and used as a witness for the State. After his cross-examination by the defense, on a redirect examination by the State, he asked where he came from when he came into Court to testify, he replied, from jail—and admitted that the appellant was there with this witness, and that while together they talked a good deal. At this point the defense objected to this testimony, on the ground that it seemed that the State wished to impeach its own witness. The Court held that it was competent for the State "to show the relationship of the witness and defendant; that it is perfectly competent and the weight of his testimony will be determined by the jury." It had not been developed that the purpose of the State was to impeach the credibility of its witness; so, therefore, if that was to be the purpose of the State, the objection had the desired effect. It is legitimate to show that a witness for the State, or any other party to the prosecution, has relations with the State or such other party. It is well for a jury to know these matters. This exception is overruled.

3. When the defendant, Colclough Stukes, was on the witness stand or a witness in his own behalf, on his cross-examination, the State sought to ascertain his relation to one Beulah Johnson. The defense objected to this testimony, on the ground that it was irrelevant. The record discloses that Beulah Johnson was the young woman whom the defendant had been charged with visiting. This was one of the grounds upon which the deceased, Capt. Wells, had charged the defendant with a violation of his

agreement with him to stay at home and quit running after other women. This question was justified on the cross-examination of the defendant to test his veracity—which is justified by the rules of evidence. The *State* v. *Howard,* 35 S. C., 201, 14 S. E., 481; *State* v. *Wallace,* 44 S. C., 357, 22 S. E., 411; *Chapman* v. *Cooley,* 12 Rich., 654. These matters of cross-examination of a witness are very much within the discretion of the Circuit Judge. *State* v. *May,* 33 S. C., 39, 11 S. E., 440. This exception is overruled.

4. Counsel for defense excepts to the right of the State, while the defendant is on cross-examination, to ask him as to an alleged interview had by the defendant with the reporter of the *Sumter Daily Item.* This was evidently intended to test his veracity as a witness, and is allowable. This is covered by our consideration of the third exception. This exception is overruled.

5. This exception, relating as it does to the competency on the cross-examination of Maria Stukes to interrogate her as to an affidavit made by her, on the ground that the affidavit had been given by said witness to persons who were interested witnesses. This cross-examination could take any range calculated to test the credibility of said witness. There could be no interested witnesses in a State prosecution. Every citizen is supposed to uphold the law to the end that justice may be administered under our law. This exception is overruled.

6. This exception involves the right of the defendant to introduce testimony tending to establish that the deceased had sustained improper relations with the wife of one Cain Burris, which fact, as alleged, had been told to the defendant. What possible connection such testimony could have borne to the case on trial we cannot see. This exception is overruled.

7. Should a Circuit Judge in his charge to the jury, wherein he gives definitions of the crimes of murder and manslaughter, be confined and limited to the definitions given

in our statute law so that the definitions of said two offenses by the common law shall not be given? We do not think a Circuit Judge is so circumscribed. The Constitution of our State forbids a Circuit Judge from charging upon the facts, but *requires* that he shall *charge the law*. There is no requirement in our own statute law that our Circuit Judges shall alone define the crimes of murder and manslaughter as set out in the statute. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be, and it is hereby, affirmed, and after the remittitur reaches the Circuit Court, that Court shall re-sentence the defendant herein.